**Harold J. KESSINGER, Plaintiff/Appellant,**

v.

**Deanna S. KESSINGER, Defendant/Respondent.**

**Deanna S. KESSINGER, Defendant/Appellant,**

v.

**Harold J. KESSINGER, Plaintiff/Respondent.**

**Nos. 60550, 60605.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 21, 1992.

John J. Oliver, Jr., Oliver, Oliver, Waltz & Cook, Cape Girardeau, for plaintiff/appellant.

Richard G. Steele, Christophe Crank, Dale Edward Gerecke, Finch, Bradshaw, Trom & Steele, Cape Girardeau, for defendant/respondent.

CRANE, Judge.

Both parties appeal an order of the trial court disposing of their separate motions to modify child custody and support and related motions. We find the trial court erred in calculating the modified amount of child support under Rule 88.01 and reverse and remand for recomputation of child support. We also reverse that portion of the trial court's order directing the mother to make certain statements to the parties' minor child. In all other respects the order of the trial court is affirmed.

Harold J. Kessinger [father] and Deanna S. Kessinger [mother] were previously married. Two children were born of the marriage, one of whom was still a minor at the time of the dissolution action and subse-

quent hearing. The marriage was dissolved June 27, 1989. Father was ordered to pay $483 per month child support. Pursuant to the Plan of Joint Custody, attached as an exhibit to the dissolution decree, mother was awarded primary physical custody of the child with reasonable rights of visitation and temporary physical custody to father, and both parties were awarded joint legal custody of the child.

After the decree was entered, father was not provided any visitation with or temporary custody of the minor child. Upon advice of his attorney, father stopped making his monthly child support payments after June, 1990. On July 26, 1990 father filed his Motion to Modify Decree of Dissolution and to Abate Child Support. On September 13, 1990, mother filed a reply to father's motion and a Countermotion to Modify Decree of Dissolution seeking to terminate the Plan of Joint Custody and for other relief.

The motions were heard on June 4, 1991. Evidence adduced at the hearing disclosed a substantial change of financial circumstances of the parties, the failure of father to receive any of the visitation or temporary periods of custody to which he was entitled under the decree, mother's role in destroying what had once been a strong relationship between father and the child, and the child's refusal to visit father.

On June 20, 1991, the trial court entered its Order denying father's motion to abate child support, awarding $5,313 in back child support, and reducing father's child support payments from $483 per month to $380 per month. The court denied mother's motion to terminate the Plan of Joint Custody. The court further ordered mother to explain to the child that the financial deprivations they suffered resulted from mother's decisions in managing her assets, that father was not obligated to make a house payment, and that father had not harassed or threatened mother.

Father asserts two grounds on appeal: First, that the court erred in not abating his child support obligation and second, that the court erred in the computation of his new child support obligation. Mother argues that the trial court erred in 1) reducing father's child support obligation; 2) not giving her interest on the back child support owed by father; 3) not terminating the Plan of Joint Custody; and 4) ordering her to make certain explanations to the child. We will examine these contentions in the order they have been raised.

*Father's Appeal*

Father first contends that the trial court erred in refusing to abate his child support obligation under § 452.340.6(1) RSMo (Cum.Supp.1989).

That subsection provides:

A court may abate, in whole or in part, any future obligation of support or may transfer the custody of one or more children if it finds:

(1) That a custodial parent has, without good cause, failed to provide visitation or temporary custody to the noncustodial parent pursuant to the terms of a decree of dissolution, legal separation or modifications thereof; and

(2) That the noncustodial parent is current in payment of all support obligations pursuant to the terms of a decree of dissolution, legal separation or modifications thereof. The court may also award reasonable attorney fees to the prevailing party.

Father filed his motion in July of 1990. That same month he stopped paying child support. In order to be eligible for abatement, a party must be current in all child support payments. § 452.340.6(2) RSMo (Cum.Supp.1989). Abatement is not self-executing. It can only take place upon a finding of a court that the statutory prerequisites have been met. *Brandt v. Brandt,* 794 S.W.2d 672, 675 (Mo.App. 1990). If a party fails to comply with a provision of a decree, the obligation of the other party to make payments for support is not suspended. The party must instead move the court to grant an appropriate order. § 452.365 RSMo 1986. Father's failure to be current in payment of child support foreclosed him from abatement of child support under § 452.340.6. Father's first point is denied.

Father next asserts that the trial court erred in using his "gross receipts" instead of "gross income" and in failing to consider mother's income in calculating his modified child support obligation. The child support guidelines promulgated by the Missouri Supreme Court in Rule 88.01 and Civil Procedure Form 14 provide that the courts use Form 14 to calculate child support. *See also* § 452.340 RSMo (Cum.Supp.1989). These provisions create a rebuttable presumption that the amount of an award determined from the application of the child support guidelines [Form 14] is the correct amount of child support to be awarded. Rule 88.01(e); § 452.340.8 RSMo (Cum.Supp.1989). The presumption may be rebutted by a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case.

■ Father contends that the trial court erred in its use of Form 14 in two ways.[1] First, he argues that the trial court incorrectly used his "gross receipts" instead of "gross income" in determining his new support obligation. From the evidence at the hearing, the trial court determined that father would have gross receipts of $30,000 for 1991. Treating that $30,000 as "gross income" under the child support guidelines, the court determined that father had a child support obligation of $380 per month. The court specifically declined to adopt father's figures for 1990 which showed a net income of approximately $8,600 after adjustment for non-reoccurring expenses.

■ Line 1 of Form 14 calls for one-twelfth of each parent's yearly "gross income." "Gross income" from self-employment is defined by the directions for Form 14 as:

"gross receipts minus ordinary and necessary expenses required to produce income. The court may exclude from ordinary and necessary expenses amounts

for depreciation expenses, investments tax credits, and other noncash reductions of gross receipts.

While the trial court was entitled to look at 1991 figures instead of 1990 figures, if it found those figures to be a more accurate predictor of income, the court was required to deduct ordinary and necessary expenses to arrive at gross income. Its use of gross receipts as gross income was error.

■ Father also argues that the trial court erred in not taking mother's income into account when it made the child support determination. The court found mother had income of $16,800 in 1990. However, the court did not consider any income of mother in calculating father's support obligation. Form 14 specifically calls for the income of the custodial parent to be taken into account and each parent's proportionate share of combined income to be determined in order to calculate each parent's child support obligation. Its failure to do so is error.

We remand the calculation of the modified child support amount to the trial court for recalculation.

### Mother's Appeal

■ For her first point mother argues that the trial court erred in finding that a substantial and continuing change of circumstances existed which warranted the reduction of husband's child support obligation.

Father testified that his income was drastically reduced when he moved his business to Carthage, Missouri. He testified his move was not made with the intention of reducing his child support obligation, but was caused by his desire not to live in the same town as mother because of mother's conduct, which had included filing a groundless ex parte order against him. He had expected to have the same earnings

1. We have not been provided with a copy of Form 14 used by the court in making its calculations. Rule 88.01 requires both parties to complete Form 14, which is a worksheet for calculating the "presumed child support amount." The completed forms are to be made part of the record. Here no form or forms were included

in the legal file. As we have previously admonished, an appellant seeking relief from a child support award without including these completed forms is doing so at his or her peril. *See Behnke v. Behnke,* 829 S.W.2d 45, 46, n. 5 (Mo. App.1992).

in Carthage as he had in Cape Girardeau, but his income was reduced as a result of changes in insurance deductions as well as a lower office visit charge for the area. Husband's gross receipts dropped from $10,000 to $12,000 per month to $2,500 per month resulting in a net annual income of $8,600. The trial court found father's move was made in good faith in response to circumstances created by mother, and not to reduce his child support obligation. The court also found that mother's income was twice what she claimed she would receive at the time of the divorce. The change in father's circumstances resulted in more than a 20% decrease in his child support obligation, which constitutes a prima facie showing of a change of circumstances so substantial and continuing as to make the present terms unreasonable. § 452.370.1 RSMo (Cum.Supp.1990). Its finding of a substantial and continuing change of circumstances was supported by substantial evidence. Mother's first point is denied.

For her second point mother asserts that the trial court erred in refusing to award her interest on the delinquent child support owed by father. The trial court found that to the extent any interest may be due on the past due child support, father was not required to pay it because father had received no visitation with or communication from the child and the property which mother failed to return to father as per their property settlement offset any claim that wife had to interest.

■■■ Delinquent child support draws interest at the rate of one percent per month. § 454.520.3 RSMo 1986. This is simple interest based on the principal owed and is not compounded. § 454.520.4 RSMo 1986; *Wallemann v. Wallemann*, 817 S.W.2d 548, 549–51 (Mo.App.1991). Thus under the statute mother would be entitled to interest in the amount of $265.65. The trial court did not award mother interest on the back support because it found that this amount was set-off by the value of property mother failed to turn over to father following their divorce. The court did not abuse its discretion in making the set-off

against any interest owed. Mother's second point is denied.

■■ For her third point mother claims the trial court abused its discretion by failing to terminate the Plan of Joint Custody. Mother and father voluntarily entered into the Plan of Joint Custody at the time of the dissolution of the marriage. The trial court approved the plan and ordered the parties to substantially comply with it. The plan provided that mother and father would have "joint legal custody" of the child as defined in § 452.375.1(1) RSMo (Cum.Supp.1989), but not joint physical custody.

Mother sought to have the plan terminated as part of the relief she requested in her Countermotion to Modify Decree of Custody. As grounds for her motion she alleged "a change of circumstances so substantial and continuing as to make the terms of the original decree unreasonable," specifically identifying two circumstances:

A. Respondent sold his chiropractic practice in Cape Girardeau, Missouri and moved to Carthage, Missouri.

B. Respondent has engaged in a systematic course of conduct consisting of harassment, intimidation, threats and attempted coercion with regard to Petitioner and said minor child.

The trial court denied mother's motion to terminate the Joint Plan of Custody and found that she had wholly failed to adduce sufficient credible evidence to terminate the plan. The court found that father's move to Carthage was in good faith and that father had not engaged in a course of harassment and intimidation. It further found that mother had failed to use reasonable efforts or her best efforts to comply with the provisions of the Joint Plan of Custody. On appeal mother argues that the plan should be terminated because of additional instances of alleged misconduct on the part of father and the child's refusal to see or communicate with father. It is clear from the order that the court did not find the evidence of father's alleged misconduct to be credible. Moreover, the court found the child's testimony had been rehearsed with mother and mimicked mother's testimony and that, although the moth-

er had directed the child to visit father, mother had alienated the child from father. The findings of the trial court are supported by substantial evidence. Mother's third point is denied.

For her final point mother argues that the portion of the trial court's order which required her to make certain explanations to the child exceeded the scope of the pleadings and violated her right of freedom of speech under the First Amendment. The order required mother to tell the child that the financial deprivations they suffered resulted from mother's actions, that father was not responsible for mortgage payments on their house, and that father did not harass, intimidate or coerce mother.

The trial court was faced with the difficult task of ensuring father's right to visitation and temporary custody. The court found that mother had alienated the child from father by making false accusations about him which caused the child to refuse to visit father. The trial court obviously concluded that explanation by mother would help reverse the child's attitude.

In Plan of Joint Custody, the parties bound themselves as follows:

> Recognizing the needs of the child for a continuing relationship with each parent, both husband and wife shall use their best efforts to foster the respect, love and affection of the child toward each parent and shall cooperate fully in implementing a relationship with the child that will give the child a maximum feeling of security. Both parents shall accommodate and nurture the social, emotional and academic developments, commitments, and endeavors of the child. Each parent shall cooperate in order that the child shall have regular and frequent contact with both parents to the end that there shall be affection and respect between the child and the parents. Petitioner and respondent each agree to take no action or engage in any conduct whatsoever which would demean the other. Petitioner and respondent agree that they shall set aside any issues and feelings of mutual antipathy and marital discord towards each other for the sake of cooperating equally and fully in the rearing of their child.

Our legislature has stated that it is the public policy of this state to assure children frequent and meaningful contact with both parents after dissolution. § 452.375.3 RSMo (Cum.Supp.1989). In enforcing the decree and the public policy of the state, the trial court may order a parent to comply with the terms of the decree, including those quoted above, and to take remedial action. *See Schutz v. Schutz,* 581 So.2d 1290, 1292–93 (Fla.1991). However, we have not been provided with any authority which would support a court's authority to compel a party to make specific statements to his or her child. We find such an order to be unenforceable and reverse that portion of the order.

### Conclusion

That portion of the judgment of the circuit court computing child support is reversed and the case is remanded for recomputation of child support. That portion of the judgment of the circuit requiring mother to advise the child that mother was responsible for the financial deprivations they had experienced, that father was not responsible for the mortgage payments and that father had not harassed, coerced or intimidated mother is reversed. In all other respects the judgment of the trial court is affirmed.

SIMON, P.J., and CRANDALL, J., concur.