**Janie Sue LUKER, Appellant,**

v.

**Jeffrey Ward LUKER, Respondent.**

**No. WD 47127.**

Missouri Court of Appeals,
Western District.

Sept. 14, 1993.

---

George R. Lilleston, Clinton, for appellant.

Fred R. Bunch, Edward E. Moore, Clinton, for respondent.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This case involved an appeal of modification of child support obligations and denial of attorney fees. Upon the dissolution of a fourteen year marriage in March, 1991 Jeffrey Luker (Jeff), respondent, agreed as reflected in the decree to pay Janie Luker (Janie), appellant, the sum of $350 per child per month. The couple had two children, Jenny and Joel Luker. On Jeff's November 6, 1991 motion to modify the trial court reduced his total obligation to $350 per month for one year and then $466 per month thereafter. The trial court did not award Janie attorney fees.

The facts, which are unusual and unique, are as follows: prior to the dissolution of the Luker's marriage, both Janie and Jeff worked at Adkins Printing. Adkins Printing was predominantly a family business owned by Janie's father, Henry. The company involved business printing and election tabulating machines and supplies. Janie's job consisted primarily of providing election coding. She worked during periods when there was an election. Janie earned approximately $290.00 a week and was paid regardless of whether she worked all or part of any particular week. She also received periodic bonuses. Immediately following the dissolution her salary increased from $290 to $550 per week and continued to receive periodic bonuses including one for $7,500 in June, 1992.

Jeff began working at Adkins in 1981 printing general business documents. At the time of dissolution Jeff's job had evolved to selling and maintaining election tabulation equipment and supplies. Jeff's salary was $440 gross per week plus $225 a week for expenses plus periodic cash bonuses. Jeff received the expense check regardless of whether he traveled that week or not.

The bonuses given to Janie and Jeff were awarded at the discretion of her father. Their combined bonuses were equal in value to that given to Mr. Adkins' other son-in-law who worked at Adkins Printing. This appears to indicate the bonuses were a means for Mr. Adkins to further support his daughters.

The couple began having marital difficulties which found their way into the work place. In November, 1990, Janie told Jeff to pack his bags and leave. In mid-February, 1991, Janie told Jeff that she would be working during the day, 8:00 a.m.–3:00 p.m., and that he should not come to work until after she had left for the day. Jeff agreed not to go to work until 3:30 p.m. In late February, Janie told Jeff that if he were to continue working for Adkins Printing it could not be in their Clinton, Missouri shop. In March, 1991, Janie told Jeff he could no longer work for Adkins Printing in Missouri, but he might work for Adkins Printing in Iowa as an election equipment salesman. Following the March, 1991 dissolution, Janie told Jeff it would be impossible for him to work at Adkins Printing after the April, 1991 election.

Additionally, there is evidence of at least one confrontation between Jeff and Janie at work. This confrontation took place after Jeff changed his work hours to comply with Janie's request that he not work while she was there. Joel, Jeff's and Janie's son, told Jeff shortly after he appeared for work one day that Janie was still at work. Seconds later Janie came downstairs and yelled at Jeff for being at work while she was there. Jeff said he felt uncomfortable and embarrassed by the public confrontation.

While still working at Adkins Printing in Clinton, Jeff leased an apartment in Des Moines, Iowa. He voluntarily left his employment at Adkins Printing in April, 1991 about a month after the dissolution. Jeff started his own business selling and maintaining election equipment and supplies in Iowa. He financed his business by loans from his former father-in-law and his parents.

From June 1, 1991 through July, 1992 Jeff has earned a net income of $3,996.00 from his new business. At the modification hearing Michael Dreilling, Director of Return to Work Center for the Meninger Clinic (a program to assist people re-entering the labor market) testified given Jeff's qualifications, on the open labor market he could expect to earn between $6–$8 per hour or $12,480 $16,640 annually. Mr. Dreilling noted the $42,000 Jeff had been making prior to April, 1991, was the result of being part of "favored employment" (i.e. part of the family business) and exceeded Jeff's true earning capacity. It was also noted that Jeff had received a potential job offer paying $30,000.

During the modification hearing Jeff submitted documents concerning his income and expenses and a copy of Form 14, used to calculate child support. Janie did not submit a Form 14. The trial court found based upon the guidelines and rules, there was a difference greater than 20% in the amount to be paid due to Janie's increase and Jeff's decrease in income, despite the income imputed to him based on the job offer he received. The court found a substantial and continuing

change in circumstances such that it made the current payments unreasonable. The court did not award the attorney fees Janie requested. This court affirms the trial court's decision.

■ Review of the trial court's decision is governed by Rule 73.01 and the principles established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision must be affirmed unless there is not substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32. Given this standard of review this court finds that the trial court did not abuse its discretion in modifying the respondent's child support obligations.

In determining the sufficiency of the evidence an appellate court will "accept as true the evidence and the inferences from that evidence that are favorable to the trial court's decision and disregard all contrary evidence." *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989).

The first issue on appeal is the amount of Jeff's modified child support obligation. Janie seeks to reinstate the decree amount of $350 per child per month. The modified amount is based on income imputed to Jeff of $30,000 which is less than the $42,000 he was making with Adkins Printing but more than his actual income of $3,996 and Janie's income. The determination to award a modification in child support lies "within the legitimate discretion of the trial court and we review only to come to a conclusion as to whether there has been an abuse of discretion or an aberrant application of the law." *Cooperman v. Holdinghausen*, 629 S.W.2d 489 (Mo.App.1981). The standard for modification of child support is "changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1 RSMo (1990). There were two predominant factors which caused the trial court to find there were changed circumstances sufficient to result in a modification of child support. First was the decrease in Jeff's income as imputed to him and second was the increase in Janie's income.

■ While Jeff voluntarily changed his employment which resulted in a decreased income, there was no indication the move was made to escape his child support obligations. *Kessinger v. Kessinger*, 829 S.W.2d 658, 661 (Mo.App.1992). In *Kessinger*, a case similar to the one before this court, the father moved his business to another city in part to get away from his ex-wife, which resulted in a decreased income. After the dissolution the mother experienced an increase of $8600 annual net income. Based on those facts, the court held since the father's move was made in good faith, and the mother increased her income, the modification met the threshold "20% decrease in his child support obligations which represented a prima facie showing of change of circumstances so substantial and continuing as to make the present term unreasonable." *Id.* at 662.

Unusual and unique facts here indicate the impetus for Jeff's voluntary change in employment was that he was part of a family run business owned and operated by Janie's family. While there was no evidence that Jeff had problems with his father-in-law, there was evidence that Janie repeatedly informed Jeff he would be unable to work for Adkins Printing. First she told him he would not be able to work in the Clinton, Missouri office, then she told him he could not work for the company anywhere in Missouri. There was also evidence of at least one confrontation between Jeff and Janie at the work. There is no indication the move was made in bad faith or to avoid his child support obligations but rather he was motivated by a desire to leave an untenable situation. The fact that this was a family run business where the couple worked together makes it distinguishable from cases where one of the parties voluntarily decreases his income for other reasons. *See In re Marriage of Stanley*, 793 S.W.2d 487, 488–89 (Mo.App.1990) (father voluntarily left partnership which resulted in lower income but still had sufficient income and assets to pay child support).

■ Furthermore, Janie experienced an increase in her income. Under § 452.370 and Rule 88.01 the increase in the custodial parent's income is a proper factor to be

considered in determining whether a modification of child support is appropriate. *See also Schofer v. Schofer*, 780 S.W.2d 69 (Mo. App.1989). Janie at the time of the hearing for modification of child support was making $260 more a week than she was at the time of dissolution.

It is further noted that in refiguring the child support obligation the court appropriately imputed $30,000 income to Jeff rather than use the $3,996 figure which represents his income from his new business. The court may impute a higher income to the non-custodial parent if the evidence indicates he has the capacity to earn more. *Morovitz v. Morovitz*, 778 S.W.2d 369, 371 (Mo.App. 1989) cert. denied 494 U.S. 1085, 110 S.Ct. 1822, 108 L.Ed.2d 952 (1990); *Overstreet v. Overstreet*, 693 S.W.2d 242, 246 (Mo.App. 1985). The imputed income figure was used because Jeff had received a job offer for a position paying $30,000 a year which he turned down in order to start his own business. With the imputed income there was a proper finding that the new amount was warranted. The court was correct in not considering as income the proceeds of business start up loans to Jeff received by his parents and his former father-in-law.

The second point is that the court erred because it did not require Janie to submit a Form 14. The calculation of child support pursuant to Form 14 is presumed to be the correct amount of child support. Rule 88.01. The use of Form 14 is *mandatory* to determine the presumed child support award. *Tuning v. Tuning*, 841 S.W.2d 264, 266–67 (Mo.App.1992); *Ibrahim v. Ibrahim*, 825 S.W.2d 391 (Mo.App.1992). However, only one form must be filed. *Tuning*, 841 S.W.2d at 266–67; *See also Sinclair v. Sinclair*, 837 S.W.2d 355, 358–59 (Mo.App.1992). While the directions for use for Form 14 say both parties shall fill out a Form 14, if the parties agree upon the amounts to be used in completing the form, only one form need be submitted. *Tuning*, 841 S.W.2d at 267 (reversed on other grounds). If there is disagreement between the parties both parties *should* submit a Form 14. *Id.* Appellant is mistaken when she says the court in *Tuning* held it was mandatory for both parties to file

a Form 14. Furthermore, the party who fails to submit the form cannot appeal error on that issue. *Hackmann v. Hackmann*, 847 S.W.2d 193, 194 (Mo.App.1993); *Ibrahim*, 825 S.W.2d at 398; *See also Behnke v. Behnke*, 829 S.W.2d 45, 46 n. 5 (Mo.App. 1992). The court in *Ibrahim* noted that to take this up on appeal after the parties own failure is "akin to pursuing a different theory for recovery on appeal than was pursued at trial." *Ibrahim*, 825 S.W.2d at 398. If this court adopted Janie's position it would act to encourage parties not to file a Form 14 so that on appeal they could say the trial court erred by not making them file a Form 14. *See Taylor v. Cleveland, C.C., S.L. R. Co.*, 333 Mo. 650, 63 S.W.2d 69, 74–5 (1933) cert. denied 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933).

The last point on appeal is the failure of the trial court to award attorney fees. The trial court has broad discretion in awarding attorney fees in support modification cases. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979); *Bewig v. Bewig*, 708 S.W.2d 769, 771 (Mo.App.1986). There was no error in that the court did not make specific findings of fact and conclusion of law on the attorney fee issue. Appellant did not request the court make findings. Under Rule 73.01 the court "may ... include its finding on such controverted fact issues as have been specified by counsel." Furthermore, "All fact issues upon which no specified findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01. The court acted within its discretion not to award the fees.

The judgment is affirmed.