**Deborah C. GAL, Petitioner/Respondent,**

v.

**Richard J. GAL, Respondent/Appellant.**

No. 68170.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 21, 1997.

R. Andrew Beeney, R. Andrew Beeney & Associates, Clayton, for Petitioner/Respondent.

Michael C. Todt, St. Louis, for Respondent/Appellant.

SIMON, Judge.

Richard J. Gal (father) appeals the modification of the child support provision of a dissolution decree entered by the Circuit Court of St. Louis County.

Deborah C. Gal (mother) filed a motion to dismiss the appeal because father is in default on the order of child support which is being appealed and therefore is not entitled to affirmative relief. The motion was ordered taken with the case. We deny the motion.

On appeal, father contends the trial court erred by: (1) awarding mother increased child support because she failed to show a change in circumstances so extraordinary and burdensome as to make the terms of the decree unreasonable; (2) including mother's "school-related" day care cost as an extraordinary expense in its Form 14 calculations; (3) including father's present wife's income in its Form 14 calculations for determining child support; (4) failing to include mother's full income for the purpose of child support; (5) making a child support award too high for father to be able to meet the reasonable needs of the children and his own financial obligations; (6) adding loans received by father to his gross income for the purpose of child support calculations; (7) assessing $1,500.00 of mother's attorney's fees against father when mother was in a better financial position to pay her own attorney's fees; (8) failing to impute income to mother for purposes of child support calculations when mother was able bodied and unemployed and (9) its incorrect addition of the amounts of income which it imputed to father for child support purposes. We reverse and remand.

Our review of the trial court's adjudication of a motion to modify a dissolution decree regarding child support is limited to determining whether it is supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Buckman v. Buckman*, 857 S.W.2d 313, 316[1–3] (Mo.App. E.D.1993). Where there is a conflict in testimony, we defer to the trial court's determination of the credibility of the witnesses. *Carter v. Carter*, 901 S.W.2d 906, 909[3] (Mo.App. E.D. 1995). We view the evidence in a manner favorable to the decree and disregard contrary evidence. *Wynn v. Wynn*, 738 S.W.2d 915, 918[1] (Mo.App.1987). We defer to the trial court even if the evidence could support a different conclusion. *Id.*

The parties' marriage was dissolved on May 15, 1992. Per the decree, father and mother shared custody of their three children with mother having primary physical custody. Father was ordered to pay child support. On May 13, 1994, mother sought to modify the decree on the issues of child support and custody. Prior to the hearing for modification, the parties resolved all issues of custody and therefore the only issues before the trial court were financial. The hearing was held before Commissioner, who made Findings and Recommendations, and father's motion for rehearing was denied.

Trial court adopted and confirmed the findings of Commissioner as the judgment of

the court. The court recognized that the previously awarded child support, $100.00 per month per child, was unreasonable in that the support calculated pursuant to Rule 88.01 exceeds the current support guidelines by more than twenty percent and that father is earning more money. The decree reads in pertinent part:

III. SUPPORT OF THE MINOR CHILDREN

The court finds as follows:

4. There are no reasonable work related child care costs.

5. There are extraordinary expenses which the court must take into account in determining child support herein. [Mother] is enrolled full-time in nursing school. As a result of her efforts to gain further education so she will be self-supporting, she incurs day care costs. These are $76.00 per week during the school year and $179.00 per week during the summer. The total annual day care costs would be . . . $440.92 per month . . .

7. [Mother's] Gross income at the time of the original decree was approximately $1,250.00 per month.

8. Currently [mother] is not employed, but earns $1,500.00 gross per month as income from an inheritance which she received. Even though [mother] is able bodied and capable of employment, the court will not impute income to [mother] at the present time because the court finds that [mother] is making a sincere attempt to improve her earning capacity in the future so that she may be better able to support herself and her children.

9. The Court finds that [father's] gross income at the time of the original decree was $1,000.00 per month.

10. Currently, [father] is employed by 4006 Inc., a corporation of which he owns all outstanding stock. [Father] has asserted that his income is $200.00 gross per week or $866.67 gross per month. [Mother] asserts that [father] has manipulated his income in such a way so that [his] income appears to be less than it actually is. The court finds that [father] has underestimated his gross income, and accordingly the court calculates [father's] income as follows:

a. [Father] has reported income of $200.00 per week or $866.67 per month.

b. [F]or thirteen months, 4006, Inc. paid Sandy Schilling Gal the sum of $3,856.26. It should be noted that Sandy Schilling Gal is now the wife of [father], and that during this period of time, Sandy Gal was employed fulltime as a school teacher. In addition, while Sandy Gal was being paid the sum of $7.00 per hour, [father] was only paying himself the sum of $5.00 per hour. The court finds that the sum of $296.64 per month ($3,856.26 divided by 13 months) should be added to [father's] gross income on a monthly basis.

c. [During a period of sixteen months] 4006, Inc., loaned $2800.00 to [father]. In addition, in August, 1994, [father] received $1,000.00 cash from 4006, Inc. Therefore, the court finds that the sum of $237.50 ($3,800.00 divided by 16 months) should be added to [father's] gross income on a monthly basis. It should also be noted that [father] does not list these loans from 4006, Inc. on his property statement . . .

d. [Mother] proved substantial credit card debt paid by 4006, Inc., and [father] did not produce any documents to substantiate his claim that these expenses were business related. However, the court notes in reviewing the exhibits of [mother], that there is no evidence that any automotive expenses were paid by check by 4006, Inc. and therefore finds that some of the credit card debt was business related. [Father] indicated that 4006, Inc. paid for all automotive expenses for [father] which he indicates are $50.00 per month for gas and oil, $2.08 for taxes and license and $64.92 which was car insurance, for a total of $117.00 per month.

e. Adding up those additions to income as set forth above, the court finds [father's] reasonable monthly gross income to be $1,617.81.

THE COURT THEREFORE CON-CLUDES AND RECOMMENDS AS FOLLOWS:

1. [Father] shall pay to [mother] the sum of $233.14 per month per child as and for the support of the minor children commencing February 1, 1995. Child support amounts were determined in accordance with authorized support guidelines. A copy of Form 14 is attached hereto.

Subsequently, father filed a motion for reconsideration or in the alternative, for a new trial on March 24, 1995. The trial court denied his motion on April 6, 1995 and father filed notice of appeal on April 11, 1995.

Mother filed a motion to dismiss father's appeal which will be taken up during the course of the opinion.

The majority of father's points relied on fail to comport with the "wherein and why" mandate of Rule 84.04(d). However, we shall review them ex gratia. We take father's points out of order.

 In his third point on appeal, father contends the trial court erred by including father's present wife's income in its Form 14 calculations for determining child support.

Father is presently married to Sandy Schilling Gal. Prior to their marriage and while they were cohabitating and sharing living expenses, Sandy worked for father at 4006, Inc. During a thirteen month period 4006, Inc paid Sandy the sum of $3,856.26 or $296.64 per month. The trial court found that father had "underestimated his gross income" and made a finding that "the sum of $296.64 per month ... should be added to [father's] gross income on a monthly basis."

On this point, § 452.370 RSMo 1994 (hereinafter all references are to RSMo 1994 unless otherwise indicated) is informative and provides in pertinent part:

1. . . . In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider *all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or the person with whom he or she*

*cohabits,* and the earning capacity of a party who is not employed. If the application of the guidelines and criteria set forth in supreme court rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, then a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable. (emphasis ours)

2. When the party seeking modification has met the burden of proof set forth in subsection 1 of this section, then the child support shall be determined in conformity with criteria set forth in supreme court rule 88.01.

As clearly stated in the statute, the extent to which household expenses are shared with a cohabitant is relevant in determining whether a change in circumstances has occurred. However, the provision is not applicable to the calculation of the amount of child support. *McMickle v. McMickle,* 862 S.W.2d 477, 482[9–10] (Mo.App. W.D.1993). Rule 88.01(b) is derived from § 452.340 which provides for the computation of presumed child support and requires the court to consider "the financial resources and needs of the parents" when calculating child support. However, § 452.340, unlike § 452.370, does not require the income of father's wife to be added in. *McMickle,* 862 S.W.2d at 482. Form 14 does not incorporate the income of a cohabitant in its mathematical calculations. *Id.* Therefore, wife's income is not a factor to be considered in a Form 14 child support calculation. *Id.; Elliott v. Elliott,* 920 S.W.2d 570, 578[14] (Mo.App. W.D.1996).

The trial court was correct to include father's present wife's income in its consideration of his financial resources and the extent to which his wife shares or should share his expenses. However, the court erred by including wife's income in determining father's gross income for Form 14 purposes. Further, the record does not indicate that the payment of income to father's wife was a charade and the income in reality was his. Father's point is meritorious.

■ Mother filed a motion to dismiss father's appeal because he has not made payments of child support in accordance with the court order since May of 1996 and is therefore not entitled to affirmative relief. It appears from the record that father had paid the amount ordered by the trial court from the date of modification until April of 1996, approximately one year. Father filed no response to mother's motion and as such does not dispute the fact that he is in arrears on child support.

■ Rule 67.03 provides that a defendant may move for involuntary dismissal based upon failure to comply with the rules or any order of the court. *See Staples v. Staples,* 895 S.W.2d 265, 266[4] (Mo.App. E.D.1995). However, it is long established that "a court has no power, when the defendant in a divorce action is in contempt in disobeying an order to pay alimony, to strike out his answer, or otherwise prevent him from interposing a defense on the merits." *Norkunas v. Norkunas,* 480 S.W.2d 92, 94[6] (Mo.App. 1972). We should not deprive him of his day in court. *Richman v. Richman,* 350 S.W.2d 733, 734 (Mo.1961). Therefore, we deny mother's motion to dismiss.

Since our disposition of point three requires that the judgment be reversed and remanded we will address only those additional points which may arise on remand.

In his first point on appeal, father contends the trial court erred in awarding an increase in child support because mother failed to show a change in circumstances so extraordinary and burdensome as to make the terms of the decree unreasonable.

■ Section 452.370 provides that a court may modify the provisions of a support decree only upon a showing of changed circumstances so substantial and continuing as to make the terms of the decree unreasonable. Under § 452.370, a prima facie showing of a change in circumstance is established if the application of the guidelines and criteria set forth in Rule 88.01 to the financial circumstances of the parties would result in a change in child support from the existing amount by twenty percent or more. *Frisella*

*v. Frisella,* 872 S.W.2d 637, 642[8] (Mo.App. E.D.1994).

Here the amount of child support was $100.00 per month per child. The trial court found the amount calculated pursuant to Form 14 and the criteria set forth in Rule 88.01 to be $233.14 per month per child. Although we find adjustments must be made in the trial court's calculations of father's gross income, the record still establishes a prima facie showing of changed circumstances.

■ In his second point on appeal, father contends the trial court erred by including mother's "school-related" day care costs as an extraordinary expense in its Form 14 calculations. Father argues that since "school-related" day care costs are not enumerated as one of the expenses allowed in the Directions for Completion of Form 14 worksheet line 4(e), the amount should not be included in the calculation of child support.

The trial court found that it must take into consideration "school-related" day care expenses for mother because she is enrolled full-time in nursing school attempting to become self-supportive. She receives no maintenance. Furthermore, father did not make himself reliably available to care for the children when mother must attend classes or clinical. The trial court, based upon mother's testimony as to her day care needs for the children, found that "there are extraordinary expenses which the court must take into account in determining child support."

An examination of Rule 88.01 indicates the court must take into account the financial needs of the parents and children when determining child support. Furthermore, Form 14, line 4(e), allows for the broad category of "Extraordinary expense[s] (Agreed by parents or ordered by Court)." The Directions for Completion provide examples as to what may be appropriate as an extraordinary expense. "Enter other extraordinary expenses agreed to by the parties or ordered by the court. Other expenses may include ..." The examples of "other expenses" did not include school-related day care.

Although use of the guidelines is mandatory, wide discretion is vested in the trial court

with respect to the granting of child support, and that ability is expressly retained under § 452.340.8. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 951[23–28] (Mo.App. E.D.1993). We review the amount of child support only to determine if there has been an abuse of discretion or erroneous application of the law. Father has the burden of demonstrating error and the incorrectness of the judgment. Although the Missouri Child Support Guidelines have been accorded substantial consideration in determining and reviewing child support awards, such guidelines are not to be automatically or rigidly applied. The guidelines are simply formulas or schedules to consider. They leave significant room for sound discretion. *Id.* Moreover, a party's testimony as to the children's expenses is sufficient evidence on which to base an allowance of child support.

Neither party cites, nor does our research reveal a case in which our courts allow or prohibit the inclusion of "school-related" day care costs as an extraordinary expense in the calculation of child support. However, we find two cases informative. In *Price v. Price*, mother was employed part-time and attended school part-time and the court awarded "work-related" day care expenses to allow her to continue her work and educational goals. 921 S.W.2d 668, 670–71 (Mo. App. W.D.1996). Further, in *Raines v. Raines*, we acknowledged the apparent need for some amount of child care expenses if mother was to work or go to school and that "any award of child support must take this expense into account," 583 S.W.2d 564, 568[7–8] (Mo.App. E.D.1979). Thus, it is apparent that day care expenses may be available not only for work, but also for school. Here, finding that the day care amount was an extraordinary expense, the court ordered the payment of these expenses to be shared by the parties and placed the amount on line 4(e) of its Form 14. We find no abuse of discretion.

In his fourth point on appeal, father contends the trial court erred in failing to include mother's full income for the purpose of child support. From what we glean from father's argument, he contends the trial court did not take into account capital gains moth-er may have received from the sale of property in Canada. The record reveals that she does list some amount as capital gains on her income tax statement. However, the court stated that father offered no evidence as to "what capital gains would be" and there is substantial evidence to support the amount the court deemed to be mother's income for child support purposes.

In his sixth point on appeal, father contends the trial court erred by adding loans received by him to his gross income for the purpose of child support calculations and relies on *Luker v. Luker*, 861 S.W.2d 195 (Mo.App. W.D.1993). In *Luker*, father received loans from his parents and former father-in-law to start a new business. While the court upheld the trial court's determination that those funds were not income to be considered when calculating income for child support purposes, it did impute income to father based upon a finding that he had the capacity to earn more than he was. *Id.* at 199[4–6]. Those facts and findings do not assist father.

Mother cites *Boudreau v. Benitz*, 827 S.W.2d 732 (Mo.App. E.D.1992) which is more analogous to our present case. In *Boudreau*, father and his new wife owned 100% of the stock of a corporation. The court found father's testimony not credible as to his characterization of some of his expenses as business rather than personal. Furthermore, the court found that father received employment-related benefits and cash disbursements which the court assigned as income pursuant to Rule 88.01. *Boudreau*, 827 S.W.2d at 734. The court did not err in piercing the corporate veil and including those amounts father had listed as retained earnings and loans because it was proper to consider the earnings of the corporation which was solely owned by father in determining his income for support purposes. *Id.; Krajcovic v. Krajcovic*, 693 S.W.2d 884, 887[3] (Mo.App.1985). We upheld the trial court's decision to attribute the amounts to father's income. *Boudreau*, 827 S.W.2d at 734.

Here, the trial court found father had underestimated his gross income. The record does not reveal any documents indicating the existence of the loans or repayment provi-

sions. The trial court did not abuse its discretion in attributing the "loans" received by father from the corporation as income for the purposes of calculating child support.

In his eighth point on appeal, father contends the trial court erred by failing to impute income to mother for purposes of child support calculations when mother was able bodied and unemployed.

In calculating child support, a trial court may properly impute income to a parent by considering past, present and anticipated future earning capacities. *In re Marriage of Julian,* 868 S.W.2d 182, 184[6] (Mo. App. E.D.1994). Such imputation of income has been used to prevent a non-custodial spouse from escaping responsibilities to support minor children. Trial courts have discretion to impute income to an underemployed or unemployed custodial parent. *Stanton v. Abbey,* 874 S.W.2d 493, 499[7] (Mo.App. E.D.1994).

In its decree the trial court stated that it took into consideration mother's present capabilities of employment and mother's present income from an inheritance. In addition, in its discretion, the court chose not to impute income to mother at the present time because the court found that mother is making a sincere attempt to improve her earning capacity by continuing her education. The record reveals substantial evidence supporting the trial court's finding. We find no abuse of discretion.

In his ninth point on appeal, father contends that the trial court incorrectly added the amounts it deemed necessary to find his reasonable monthly gross income. We agree. The trial court should recalculate father's gross income and the obligations of the parties in accordance with this opinion. We reverse and remand the judgment for further proceedings in accordance with this opinion.

Judgment reversed and remanded.

RHODES RUSSELL, P.J. and KAROHL, J., concur.