Leisa DOUGLAS–HILL, Respondent,

v.

William H. HILL, III, Appellant.

No. WD 56207.

Missouri Court of Appeals,
Western District.

Sept. 28, 1999.

Linda Faye Turley Dycus, Kansas City, for appellant.

Mary Ann Drape, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge HAROLD L. LOWENSTEIN and Judge EDWIN H. SMITH.

LAURA DENVIR STITH, Presiding Judge.

William H. Hill, III (Father) appeals the trial court's judgment and decree of dissolution of his marriage to Leisa Douglas–Hill (Mother). Father alleges the trial court failed to follow statutory law in awarding child support, failed to properly calculate retroactive child support, and

failed to properly divide the parties' marital and non-marital property. Because we find the trial court erred in failing to deduct Father's ordinary and necessary business expenses in arriving at his gross income, in failing to deduct Mother's federal tax credit for work-related childcare costs, in including $300 per month in the child support award for private education expenses without adequate evidence of need, and in failing to include the proper legal description in the distribution of real property, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were married on August 5, 1990. Together they had one child, Bijon Christian Hill, born on November 17, 1990. During the marriage, Father owned several pieces of income-producing rental property which he operated through Houston Management, a company he founded in 1989. In January 1996, Mother and Father separated.

On July 29, 1996, Mother filed a Petition for Dissolution of Marriage seeking a division of the martial property and debt, custody of Bijon, who was then five years old, child support, maintenance, and attorneys' fees for the cost of the action. On May 15, 1996, Father filed his answer and cross-petition for dissolution, also seeking a division of property, joint legal and physical custody of Bijon, and child support.

Following a hearing on March 30, 1998, the trial court entered a judgment dissolving the Hills' marriage on July 2, 1998. The court awarded Mother the care, custody, and control of the minor child, Bijon, subject to Father's rights of reasonable visitation. The court adopted Mother's Form 14 and ordered Father to pay $1,065 per month in child support for Bijon. Mother requested $300 per month for private school. The court found Bijon to be gifted and talented, and that prior to the parties' separation, she had always been in

private daycare and kindergarten. Mother also testified that prior child care had cost about $300 per month and that she believed that it would cost at least this much to send the child to the two private schools to which she had applied or was planning to apply to, in addition to financial aid, although she had not yet heard from them about admission, tuition or the amount of financial aid available. Based on this evidence, the judge included in the child support award $300 per month for Bijon's private education. The court further entered judgment against Father in the amount of $17,108 for a child support arrearage accrued during the period of separation.

The trial court also divided the marital property and debt. The court found the marital real property consisted of four separate properties, including the marital residence. The court found the aggregate equity of these marital properties to be $45,324.75, and entered judgment against Father for $22,675, representing Mother's portion of the marital property. The court then set aside three of the properties to Father, ordered the sale of the marital residence, and ordered that the first $22,675 of the proceeds from that sale go to Mother in satisfaction of her judgment against Father. The court divided the remaining marital property as follows: Mother was awarded the car, the UMB bank account, and all personal property in her possession; Father was awarded the motorcycle, the Mercantile bank account, the Houston property account, and all personal property in his possession. The court found no need for an award of maintenance, and ordered Father to pay Mother's attorneys' fees and costs of the dissolution, amounting to $2,925. Father appeals.

## II. STANDARD OF REVIEW

On appeal of a judgment in a dissolution of marriage proceeding, we review the evidence in the light most favorable to the trial court's decision. *Replogle*

*v. Replogle,* 903 S.W.2d 551, 553 (Mo.App. 1995). We will affirm the trial court's decree unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or misapplies the law. *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo.App.1997), *quoting, Allen v. Allen,* 927 S.W.2d 881, 885 (Mo. App.1996). The party challenging the dissolution decree has the burden of demonstrating error. *Id.*

## III. CHILD SUPPORT ISSUES

Father alleges the trial court erred with respect to the child support determination in the dissolution decree in: (1) failing to subtract ordinary and necessary business expenses in calculating Father's gross income on the Form 14; (2) failing to deduct any federal tax credit for Mother's reasonable work-related child care costs; (3) using an inflated amount for health insurance costs on Form 14; (4) including $300 per month for private school expense when the child was not enrolled in or attending private school and the costs for such schooling were speculative; (5) ordering a child support judgment which was against the evidence of what Father had the ability to pay; and (6) making a mathematical error in calculating the child support arrearage owed by Father.

### A. Trial Court's Form 14 Rulings.

In Missouri, Rule 88.01 and Section 452.340 govern the award of child support.[1] Rule 88.01, together with Section 452.340, provides a two-step procedure for determining child support. *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo. App.1996). First, the trial court is required to calculate the child support amount pursuant to Civil Procedure Form

No. 14, either by accepting one of the parties' proposed Form 14's or by rejecting them if they are not accurately or correctly completed and preparing one of its own. There is a presumption that the amount of child support calculated pursuant to Form 14 is the amount of child support to be awarded. The trial court may rebut the presumed Form 14 support amount, however, by finding it to be unjust or inappropriate after considering all the relevant facts and circumstances of the individual case. *Id.* at 378–79; Rule 88.01. The burden is on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate. *Elliott v. Elliott,* 920 S.W.2d 570, 575 (Mo.App.1996).

Here, each party submitted a Form 14. The trial court rejected Father's Form 14 and adopted Mother's Form 14 as its judgment, with minor modifications. In basically adopting Mother's Form 14, the trial court found Mother's gross monthly income to be $2,083, and imputed to Father a gross monthly income of $4,820.[2] The court utilized the combined income of Mother and Father, $6,903, to arrive at the presumed child support amount of $853 per month. To this amount the court added the cost of reasonable work-related child care expenses, which it determined to be $286 per month; of health care insurance, which it found was $83 per month; and of private school, which it found to be $300 per month. The court then calculated the total presumed amount of child support to be $1,522 per month, with Mother responsible for 30% ($457) and Father responsible for 70% ($ 1,065). The court ordered Father to pay $17,108 in arrearage, owed at the rate of $855 per month (70% of the court-determined child support amount less the $300 private school expense) covering the period from

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. Although Father was unemployed at the time of the dissolution hearing, the trial court imputed to him an annual salary of $30,000, or gross monthly income of $2,500, based

upon his prior employment. In addition to this imputed $2,500 income, the court added the $2,320 in monthly proceeds Father receives from his various rental properties, and arrived at a total gross monthly income of $4,820.

September 1996 (shortly after the petition was filed) until the date of judgment.

## B. Error in Failure to Deduct Ordinary and Necessary Business Expenses.

█ Father asserts the trial court erred in failing to subtract ordinary and necessary business expenses from his gross income in determining his support obligation. As noted, the court adopted the gross income reported on Mother's Form 14, which listed an imputed monthly income for Father of $2,500 per month, and additional monthly rental income of $2,320. Father argues that the latter figure was unsupported by the evidence and improperly calculated under Form 14, in that it constituted his gross monthly *receipts* from his rental property rather than his gross monthly *income*. Father argues that the directions to Form 14 require the court to deduct from gross rent or proprietorship income all ordinary and necessary business expenses in arriving at a gross rental income figure, and the trial court failed to do so.

We agree. At the time of the hearing, the "Directions for Completion of Form 14" stated:

> For income from rent, royalties, self-employment, proprietorship or a business or joint ownership or a partnership or closely held corporation, *"gross income" is defined as gross receipts minus ordinary and necessary expenses required to produce income.*

(emphasis added).

This provision was addressed in *Kessinger v. Kessinger*, 829 S.W.2d 658 (Mo. App.1992), and *Spradling v. Spradling*, 959 S.W.2d 908 (Mo.App.1998). In *Kessinger*, the court held that use of gross receipts as gross income on a Form 14 was error, and that the lower court should have deducted ordinary and necessary business expenses from self-employment income to arrive at gross income. *Kessinger*, 829 S.W.2d at 661. In *Spradling*, the trial court's failure to make findings regarding the ordinary and necessary business expenses in arriving at a figure for gross income was held to be error necessitating a remand in order to properly determine income for purposes of Form 14. *Spradling*, 959 S.W.2d at 913–14.

These cases, and Form 14 itself, make it clear that a court should deduct ordinary and necessary business expenses from gross receipts in preparing Form 14. The amount and validity of Father's ordinary and necessary business expenses in this case is hotly disputed, however. Father asserts that the court was required to deduct $1,800 in mortgage expenses from his $2,320 total monthly rental income, leaving him a net rental income of only $520 per month. Mother correctly notes, however, that deduction of principal payments on a mortgage is not appropriate if those payments add to the net value of the asset and are not otherwise considered in determining child support, citing *Schubert v. Tolivar*, 905 S.W.2d 924 (Mo.App.1995). In *Schubert*, as in the present case, father had several pieces of rental property. The trial court in *Schubert* deducted from father's gross income a share of costs for upkeep of the property, as well as the interest portion of the mortgage payments on the rental property. Father, however, argued the trial court erred because it did not deduct the principal payments on his mortgages. The Eastern District found that, because father failed to request legal findings of the trial judge, it was appropriate to presume the trial court correctly applied the guidelines of Form 14, and based its support determination on income rather than assets. *Id.* at 928–29. The court went on to state that income which builds assets that are not considered in formulating the support order should not be shielded by being excluded from the Form 14 income determination. *Id.*

Mother claims that here, as in *Schubert*, it would be error to allow Father to exclude all of the $1,800 in mortgage payments, as this would permit Father to shield most or all of his income by invest-

ing in real estate to the extent it increased his assets and those assets were not otherwise considered on the Form 14. We agree, although we also agree that under *Kessinger* and *Spradling* the trial court had a duty to deduct the interest portion of Father's mortgage payments on his rental properties, as well as any other reasonable and necessary business expenses, before arriving at his gross income. *See also Crowley v. Crowley,* 878 S.W.2d 70, 73 (Mo.App.1994) (trial court was required to deduct the ordinary and necessary expenses from gross receipts). It is clear from the court's Form 14 that it did not do so. Therefore, we must reverse the court's judgment on child support and remand for the court to properly determine Father's gross income in accordance with the principles just stated.

In addition, Mother asserts the $1,800 figure Father gives for his mortgage payments is incorrect. She asserts that $662 of the $1,800 mortgage payment figure is for the payment not on a rental property, but on the marital home where Father resided. She further asserts that the $1,800 mortgage payment figure includes payments on second mortgages on several of the rental properties. And, she notes, there was little, if any, evidence as to which properties were secured by the loans, the amount of monthly payments, or how much of the payments were principle and how much interest. Thus, she argues, to permit Father to exclude $1,800 in mortgage payments is against the weight of the evidence. On remand, the court can consider the evidence on these issues in determining the amount to be deducted, and in its discretion may hold an additional hearing on this issue if necessary to resolve these factual disputes.

### C. Failure to Deduct Federal Tax Credit.

■ Father claims that the trial court also erred in accepting Mother's Form 14

because Mother failed to take into account her federal tax credit for reasonable work-related childcare expenses. Mother concedes that she did not deduct the federal tax credit for childcare on her Form 14, but argues that Father did not offer any evidence at trial pertaining to the federal tax credit. Mother asserts that where, as here, neither party presents evidence pertaining to the federal tax credit, the trial court's judgment should not be reversed for failure to consider the tax credits, citing *Leone v. Leone,* 917 S.W.2d 608, 613 (Mo.App.1996), and *McCormick v. McCormick,* 934 S.W.2d 32, 34 (Mo.App.1996).

Father concedes that in both *Leone* and *McCormick,* the trial court's failure to consider federal income tax credits in its Form 14 calculations was determined to not be an abuse of discretion requiring reversal when no evidence was presented at trial pertaining to the federal income tax credit. But, Father requests that if his Court remands for other reasons, we should also direct the court on remand to allow further evidence on the federal tax credit.[3]

■ We agree. The use of Form 14 in calculating child support is mandatory. "The Form 14 worksheet and its directions for completion mandate which items are to be considered in the calculation and constitute a "formula" for determining the presumed correct child support amount as envisioned by § 452.340.7 and Rule 88.01." *Woolridge,* 915 S.W.2d at 378. At the time of the hearing, line 4(b) of the presumed child support amount calculation worksheet provided, "Custodial parents reasonable work-related child care costs (Actual costs less federal tax credit)," and the directions for the preparation of Form 14 instruct the preparer to:

> Enter the reasonable monthly work-related child care costs less any federal

<hr>

**3.** Note that Form 14 was revised effective in October 1998, and that the parties no longer need to present evidence specifically directed to the federal tax credit. Rather, the amount to be deducted is determined under line 6(a) and the accompanying worksheet based on the parties income.

income tax credit available to the custodial parent. To determine the allowable tax credit percentage, use the custodial parent's gross income on line 1.

Worksheet, line 4b.

In our recent decision in *Edmison v. Clarke*, 988 S.W.2d 604, 612 (Mo.App. 1999), we held the above provision is mandatory and requires the consideration of reasonable monthly work-related child care costs less any federal income tax credit. It was not considered here.

### D. Health Insurance Cost Properly Considered.

■ Father asserts the trial court erred in accepting Mother's Form 14 and in basing its calculation of child support on Mother's Form 14 because the health insurance costs on the Form 14 were contrary to Mother's testimony at trial.

The directions for the completion of Form 14 required that the amount entered on line 4c for health insurance cost be:

[T]he amount actually paid by the parent or that the employer actually deducts from the parent's paycheck, on a monthly basis, for health insurance benefits. The amount included in the child support calculation is the amount of the health insurance premium actually attributable to the child(ren) subject to the order. If this amount is not available or cannot be verified, the total cost of the premium is divided by the total number of persons covered by the policy and then multiplied by the number of children covered by the policy who are subject to the order.

At trial, Mother testified she pays $167 per month for health insurance for both herself and Bijon. Mother did not break down the insurance costs for herself and for Bijon, but instead simply testified that the cost of her monthly health insurance premium would "probably be split in half" for Bijon. Half of Mother's health care premium of $167 is $83.50, but on Mother's Form 14, the sum of $93.00, rather than

the sum of $83.50, was attributed to Bijon's health insurance costs. Thus, Father asserts that it was error for the court to accept Mother's Form 14 calculation when entering its order.

The record shows that the trial court found Bijon's health insurance cost to be the $83.50 a month, rather than Mother's Form 14 amount of $93.00 a month. This was within its discretion under the evidence. In its findings, the court also concluded that the total amount of Father's support would be $1,065 a month, rather than Mother's Form 14 total of $1,072 a month. Thus, the trial court corrected Mother's mathematical error and its findings reflect this correction. The trial court did not err in assessing Bijon's health insurance cost.

### E. Private Education Expense Evidence Was Too Speculative.

■ Father asserts the trial court erred by including the cost of private education in the child support award. Father claims there was insufficient evidence to establish that Bijon would attend private school in the near future, and that the evidence that the cost of her private education would be the $300 per month was too speculative to support the award.

■ Educational expenses can either be included in the Form 14 calculation of child support in line 4(e) (now line 6(e) in the 1999 Form 14) as an extraordinary expense, or they can be considered in rebutting the presumed child support amount as unjust and inappropriate, as a basis for adding a just amount to the child support award otherwise determined. *DeCapo v. DeCapo*, 915 S.W.2d 343 (Mo.App. 1996); *Elliott v. Elliott*, 920 S.W.2d 570 (Mo.App.1996). In this case, the trial court chose to include the educational expense in line 4(e) of its Form 14. At the time of the dissolution hearing, the Directions for Completion of Form 14 provided:

Enter other extraordinary expenses agreed to by the parties or ordered by the court. Other extraordinary expenses may include the cost of attending tutoring sessions; special or private elementary and secondary schools to meet the particular educational needs of the child; camps, lessons, travel or other activities intended to enhance the athletic, social or cultural development of the child(ren).

Under this provision, the issue of whether to include monies for private education in the child support award under Form 14 rests in the sound discretion of the trial court. We defer to the court's judgment on award of private educational expenses unless the evidence is "palpably insufficient" to support it. *Markowski v. Markowski,* 793 S.W.2d 908, 909–10 (Mo.App. 1990).

Here, the court's order stated as follows: Bijon Christian Hill, born November 17, 1990 is gifted and talented. She has always been in private daycare of [sic] school until this year. She is currently attending Hartman Elementary. [Mother] and [Father] both testified it was in her best interest that she attend private school. [Mother] has applied for financial aid at Pembrook Hill and Notre Dame de Sion. Even with financial aid, [Mother] believes private education costs will be $300.00 a month.

The court therefore ordered $300 per month in private education costs for Bijon.

This record provides some support for the trial court's determination that it was appropriate to require Father to pay for private education for Bijon, in that it showed Bijon had attended private daycare and kindergarten in the past and both parents agreed it was in Bijon's best interest to attend private school. However, the record does not support the award of $300 per month for this purpose. At the time of the hearing, although Mother testified she had applied or was planning to apply for financial education at two private schools in the area, Bijon was enrolled in

and attending public school, and thus had no current school costs. Mother had not heard back from the schools about Bijon's application, and so did not know whether she would even be accepted at the schools, or what the tuition was, much less what financial aid she would receive. While Mother said she had previously paid $300 per month for private child care and she thought she would probably have to pay at least this much at the private schools, this was purely a prediction on her part. Nothing shows whether $300 was a reasonable estimate, or was instead too high or too low, and whether the amount of $300 per month was needed only during the 9 months of the school year, or whether the expense was spread out over the entire 12 months of the year.

Based on the limited information in the record, it was an abuse of discretion for the trial court to adopt Mother's Form 14 and to award $300 per month for private school expense when Bijon had not yet enrolled in any particular school and Mother testified she was uncertain of the tuition expense. *See Dachsteiner v. Dachsteiner,* 894 S.W.2d 248, 251–52 (Mo.App.1995) (record was too sparse to order payment for private education when mother failed to present evidence of when the child began school or which private school the child was attending). While an award of school costs may be made contingent on future entry into school, *See Webb v. Fox,* 978 S.W.2d 16, 21 (Mo.App.1998), it must be based on specific evidence of those costs. Since we remand for further proceedings, however, and since time may have made the issue of school expense less speculative, the court may consider additional evidence concerning Bijon's attendance at private school and its costs on remand.

F. *Father's Ability to Pay Child Support.*

██ Father claims the trial court further erred in its determination of child support because the court was required to

consider the financial resources of the parties, and, he asserts, there was substantial evidence that he did not have the ability to pay the amount of child support ordered. Specifically, Father contends the evidence presented at trial showed that: (1) he was unemployed; (2) the net income from his rental properties was $520 per month; (3) his monthly expenses exceeded $4,000 per month; and (4) since the. separation, he had to sell his non-marital assets and borrow money from relatives in order to bridge the gap between his income and expenses. Father further asserts that even adding the $2,500 in monthly income imputed to him, to the $520 net income from his rental properties, he is still unable to meet his monthly expenses, which are in excess of $4,000. This, he suggests, establishes that he cannot pay the amount of support awarded by the trial court.

■■■ There is a presumption that the child support amount calculated pursuant to Form 14 is correct, but this presumption may be rebutted if the trial court finds that the amount calculated is unjust or inappropriate after considering all relevant factors. *Elliott*, 920 S.W.2d 570. Section 452.340.1 provides that the "financial resources and needs of the parents" is one of the relevant factors for the court to consider. In determining the financial condition of the party paying support, the court may consider his past and present earnings and anticipated future earning capacity. *Jones v. Jones*, 958 S.W.2d 607 (Mo.App.1998). Where the party is unemployed, or underemployed, the court may attribute income to that party according to what he could have earned by the use of his best efforts to gain employment suitable to his capabilities. *Id.*

Here, in making its child support determination, the trial court imputed income to Father of $30,000 per year. The record shows that Father has a bachelor degree

in economics and has previously held positions at casinos earning over $30,000 per year. Father also had interviewed and was waiting for an offer for a new position at a different casino with an annual salary of $30,000. Thus, the evidence supported the court's decision to impute an annual income of $30,000 because the sum was based on Father's prior earnings as well his anticipated future earnings.

In any event, this issue is moot as the trial court will be reconsidering the child support issue and Father's rental income on remand and can consider Father's ability to pay when it determines whether the Form 14 amount determined on remand is unjust or inappropriate.[4]

## IV. DIVISION OF MARITAL PROPERTY

### A. Legal Description of Real Property.

Father alleges the trial court erred in failing to set forth the legal description of each parcel of real estate in its judgment. In the dissolution order, the court found "the following marital real properties are set aside to [Father]: 2739 Garfield, Kansas City, MO; 2208 E. 29th St., Kansas City, MO; 5424 Swope Parkway, Kansas City, MO." Father claims this was error since the court had before it the deeds containing the legal descriptions of the real estate.

Mother concedes that the court must generally include a legal description of the real property awarded in a dissolution, but argues that, because in this case all real property, both marital and non-marital, was awarded to Father, and because she has executed quit claim deeds to the properties in question, no real issue is in dispute.

■■■ However, the full legal description of the property in a dissolution decree is necessary. *See Lance v. Lance*, 979

4. Father also claims the trial court made a mathematical error in determining his arrearage in child support. The petition was filed in July 1996. The court entered a $17,108 judgment against Father for arrearage retroactive to September 1996. On remand, the court can consider the mathematical arguments and determine if error exists.

S.W.2d 245, 248 (Mo.App.1998); *Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 785 (Mo.App. 1998). The reason for the rule requiring a full legal descriptions of real property is to ensure that the filing of the dissolution decree with the recorder of deeds is effective in dispelling future questions as to land title. *Id.*Both parties agree that the descriptions contained in the judgment are not proper legal descriptions of the real estate. The trial court erred as a matter of law by failing to set forth the legal description. Therefore, on remand, the court is instructed to set out the full legal description of the real estate.

### B. Failure to Divide All Marital Property.

Father asserts that the court's decree failed to dispose of all of the parties' marital and non-marital real estate and that the court actually included in its judgment property never owned by the parties.

First, Father argues the trial court included in its judgment the division of only half of each of two duplex properties. At trial, Father listed the two duplex properties as 5424 and 5426 Swope Parkway, a duplex, and 2735 and 2737 Garfield, a duplex. In its judgment the court found the property at 2735 Garfield to be Father's non-marital property, and the property at 5424 Swope Parkway to be marital property, and awarded both properties to Father. However, the court made no mention or distribution of the property at 2737 Garfield and 5426 Swope Parkway. Given the fact that Father was awarded all real estate, this error is probably a mere technical error in failing to mention the second address for both buildings, but on remand the court should revise its order to include both portions of the duplex properties when it includes the legal descriptions. Indeed, this provides an example of why it is better to make the award based on legal description rather than based on a street address.

Second, Father asserts there was no evidence to support the award of 5735

Swope Parkway to him, as there was no evidence that he ever owned this property. Father testified he owned property at 5424 and 5426 Swope Parkway, and placed into evidence a warranty deed for each parcel of real estate. Mother testified there was marital property owned at 5424 Swope Parkway and 5735 Swope Parkway, but Mother offered no evidentiary support of ownership outside of her testimony. Father asserts that is was error to set aside to him the property at 5735 Swope Parkway. In light of the fact that we are remanding on other grounds, this issue can be resolved on remand.

### C. Classification of Marital and Non–Marital Assets.

Last, Father asserts, the trial court erred in finding the real estate at 5424 Swope Parkway was marital property, and that this error resulted in a disproportionate award of marital property in favor of Mother. Father argues that he inherited the Swope Parkway property during the marriage, and thus, under Section 452.330, it should be excluded from the definition of marital property. Mother asserts the fair market value of the Swope Parkway property is essentially equal to the value of the encumbrances on the property, which ultimately makes its classification immaterial to the division of assets, regardless of its classification as marital or non-marital. *Burk v. Burk,* 936 S.W.2d 144, 146 (Mo. App.1996) (because the dissolution decree was nonetheless fair, any erroneous declaration in what is or is not marital property does not require reversal); *See also In re Marriage of McMillin,* 929 S.W.2d 947, 950–51 (Mo.App.1996).

Here, Father was actually awarded all the real estate, and as he does not assert that any possible misclassification of the properties in question resulted in an unjust distribution of property, we would normally not find this a matter of reversible error. However, because we remand on other grounds, the court may consider evidence as to whether the property was

properly characterized as marital, and may adjust its award, if appropriate.

For all of these reasons, the judgment is reversed and remanded for a redetermination of Father's income and of child support in accordance with this opinion, for a disposition of all the marital property, and so that the decree can be amended to provide the proper legal descriptions of the real property awarded.

Judge HAROLD L. LOWENSTEIN and Judge EDWIN H. SMITH, concur.