**Monte W. SEARCY, Appellant,**

v.

**Susan C. SEARCY, Respondent.**

**No. WD 60604.**

Missouri Court of Appeals, Western District.

Sept. 24, 2002.

Phillip A. Burdick, St. Joseph, MO, for appellant.

Thomas R. Summers, St. Joseph, MO, for respondent.

Before: HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, Jr., and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Monte W. Searcy appeals from a judgment modifying his child support obligation and his visitation schedule. Mr. Searcy contends that the trial court improperly considered the cost of dance and piano lessons for his children and his current spouse's income when modifying his child support obligation. He also contends that the trial court improperly restricted his visitation schedule. For the reasons discussed below, we affirm the portion of the judgment modifying Mr. Searcy's visitation schedule and the child support. We reverse the portion of the judgment addressing the cost of lessons and remand the case for further proceedings on that issue alone.

## I. Factual and Procedural Background

Appellant Monte W. Searcy and Respondent Susan C. Searcy (mother) divorced in 1995. At that time the trial court entered a judgment awarding both parents joint legal custody of their three children and awarding primary physical custody to Ms. Searcy. The court ordered Mr. Searcy to pay $190 per week in child support. The court also awarded him visitation at the following relevant times: from 5:00 p.m. on Friday through 8:00 p.m. on Sunday, every other weekend; and from 4:30 p.m. through 8:30 p.m., every Wednesday evening.

On April 3, 2001, Mr. Searcy moved to modify his child support obligation, claiming that he had lost his job and that the resulting change in financial circumstances met the statutory twenty-percent threshold for modification.[1] On June 13, 2001, Ms. Searcy filed a counter-motion seeking to modify the original visitation agreement. Ms. Searcy contended that the late weekend and Wednesday evening visitation schedule adversely affected the children's schoolwork, resulting in unfinished homework assignments, increased absences, and declining grades. She proposed ending Wednesday evening visitation at 7:00 p.m. and ending Sunday evening visitation at 6:00 p.m. to allow the children sufficient time to prepare for school the next day.

Although both parents submitted Form 14 calculations setting forth presumed child support amounts, the trial court rejected their Form 14's and prepared its own Form 14. Based upon its Form 14 calculations, the trial court determined that Mr. Searcy's presumed child support amount was $317 per month. But the court rebutted this amount as "unjust and inappropriate" under the circumstances. The court considered the financial needs and resources of the children, including the extraordinary expense of dance and piano lessons requested by Ms. Searcy. The trial court also considered the financial needs and resources of the parents, including the extent to which Mr. Searcy's reasonable expenses should be shared by his current wife. Based on these factors, the trial court set Mr. Searcy's child support payments at $550 per month, substantially less than the $823 per month that he paid under the original judgment, but more than the $317 per month presumed Form 14 amount.

1. *See* § 452.370.1, RSMo.

Concluding that a modification of visitation would promote the children's best interests, the trial court also shortened Mr. Searcy's Sunday evening visitation by one hour and shortened his Wednesday evening visitation by one-and-one-half hours, overall somewhat less than Ms. Searcy had requested.

Mr. Searcy raises three points on appeal. In his first point, he contends that the trial court should not have considered the cost of lessons as a factor rebutting the Form 14 amount, because Ms. Searcy presented no substantial evidence to support this expense.

In his second point, Mr. Searcy argues that the trial court should not have considered his new wife's income as a factor rebutting the Form 14 amount. He contends that his new wife's income is only relevant under § 452.370 when establishing the twenty-percent threshold for changed circumstances.

In his third and final point, Mr. Searcy argues that the trial court restricted his visitation under § 452.400.2, when it shortened his Wednesday and Sunday night visitation by one-and-one-half hours and one hour, respectively. Because the trial court "restricted" his visitation, Mr. Searcy argues that the trial court erred when it failed to make findings that the original visitation schedule would endanger the children's health or impair their emotional development.

## II. Standard of Review

■ We will affirm the trial court's ruling modifying child support "unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Shiflett v. Shiflett*, 954 S.W.2d 489, 492 (Mo.App. W.D.1997). We will affirm under any reasonable theory supported by the evidence. *Id.* We defer to the trial court's credibility determinations and view the evidence in the light most favorable to its ruling. *Id.* We will not disturb a child support award "unless the evidence is 'palpably insufficient' to support it." *Elliott v. Elliott*, 920 S.W.2d 570, 574 (Mo.App. W.D.1996) (quoting *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App.1994)).

■ We likewise will affirm the judgment modifying visitation "unless it is not supported by substantial evidence, [it] is against the weight of the evidence, or [it] misstates or misapplies the law." *Stirling v. Maxwell*, 45 S.W.3d 914, 915 (Mo.App. W.D.2001) (citations omitted).

## III. Legal Analysis

### A. Child Support Determination

■ To determine a proper child support amount, the trial court applies a two-step analysis. In step one, the trial court determines for the record the presumed child support amount using Form 14. *Schriner v. Edwards*, 69 S.W.3d 89, 92–93 (Mo.App. W.D.2002). The trial court can determine this amount "either by accepting one of the parties' proposed Form 14's or by rejecting them if they are not accurately or correctly completed and preparing one of its own." *Douglas–Hill v. Hill*, 1 S.W.3d 613, 616 (Mo.App. W.D.1999). Step one is a " 'mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated in § 452.340.7 and Rule 88.01.' " *Schriner*, 69 S.W.3d at 93 (quoting *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D. 1996)).

■ While the Form 14 amount carries a presumption of correctness, the trial court need not award that amount automatically. *See Hill*, 1 S.W.3d at 616.

Thus, in step two, the trial court should consider whether to rebut the Form 14 amount as "unjust or inappropriate" after considering all relevant factors. *Id.* The party seeking to rebut the Form 14 amount bears the burden of showing that it is unjust or inappropriate. *Id.* " 'Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards.' " *Schriner,* 69 S.W.3d at 93 (quoting *Woolridge,* 915 S.W.2d at 379).

In this case, the trial court rejected the Form 14 calculations submitted by the parties and calculated the presumed Form 14 amount itself, deriving a figure of $317 per month. After calculating the presumed Form 14 amount, the trial court then considered all *relevant* factors set forth in § 452.340.1 and rebutted the presumed correct amount as "unjust and inappropriate" .under the circumstances. The trial court determined that the reasonable and necessary child support amount is actually $550 per month. In awarding this amount, the trial court considered 1) the "financial needs and resources of the children, including the extraordinary expenses of lessons," 2) the financial resources and needs of mother and father, including their income and expense statements, and 3) the extent to which father's reasonable expenses are or should be shared by his new wife, a registered nurse.

Mr. Searcy does not challenge the trial court's rejection of the parties' Form 14's or the court's calculation of the presumed Form 14 amount in step one. He challenges the trial court's consideration of lessons and his current wife's income to rebut the presumed Form 14 amount in step two. We accordingly address the trial court's consideration of these factors in rebutting the presumed Form 14 amount.

## 1. The Cost of Lessons

■ The trial court may consider properly-substantiated costs for dance and piano lessons as an "extraordinary child-rearing cost." *Elliott,* 920 S.W.2d at 576. *See also* DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM No. 14, **Line 6e: Other extraordinary child-rearing costs,** A. *COMMENT* (" 'Other extraordinary child-rearing costs' may include ... lessons ... or other activities intended to enhance the athletic, social or cultural development of a child").

■ There must be substantial evidence to support such extraordinary expenses, however. In *Hill, supra,* a parent sought an award of $300 per month to pay for her daughter's private schooling. Although the child had attended a private daycare and kindergarten in the past, she was attending public school at the time of trial. The parent testified that she had applied or was planning to apply at two private schools, but had not yet done so. *Hill,* 1 S.W.3d at 620. She further testified that she had paid $300 per month for private child care in the past and thought that she would have to pay at least that amount at the private schools. *Id.* This court found insufficient evidence to warrant an award of $300 per month where the daughter "had not yet enrolled in any particular school and Mother testified that she was uncertain of the tuition expense." *Id.*

A parent likewise sought an award covering the cost of private schooling in *Nelson v. Nelson,* 25 S.W.3d 511, 523 (Mo. App. W.D.2000). The only evidence regarding this expense "was found in the [mother's] income and expense statement, in which she listed $200 for 'school and books' and $30 for 'school lunches.' " *Id.* Because the statement failed to indicate the time period supposedly covered by these expenses, this court again found in-

sufficient evidence to support the award or to determine the correct calculation. *Id.* *See also Hott v. Hott,* 865 S.W.2d 449, 450 (Mo.App. S.D.1993) ("Appellant offered no evidence regarding the needs of the child other than responses to two questions posed by her attorney. She stated that she had 'considered uses' for increased child support.... She said that Holly wanted piano lessons; she would purchase a piano.... There was no evidence of the cost of the things appellant itemized").

▬ As in *Hill* and *Nelson,* the evidence in this case is not sufficient to justify a modification of child support based upon these extraordinary expenses. Ms. Searcy's income and expense statement simply listed $60 for "lessons," without any further explanation. Her testimony failed to clarify whether $60 represents the cost of past dance lessons or the combined cost of pending dance and piano lessons:

Q. You show [on Ms. Searcy's income and expense statement] lessons of $60 per month. What lessons have the kids historically had?

A. They've been taking dance lessons. The, the place they were taking before, we weren't satisfied with. There's several other parents weren't, and they were switching to Arising Star, so we— they haven't been taking lessons and they were supposed to start at Arising Star this fall.

Q. Okay. Which two?

A. Lauren and Kallie.

Q. The middle and the, the little one. Okay. And, and have they done that?

A. No.

Q. And why not.

A. Because I think we're going to have to cut them. We're not going to be able to afford lessons.

Q. Okay. Somebody taking piano?

A. I promised Kallie she could start piano lessons this month, but we'll have to cut that, too.

Q. Okay. So right now—

A. So right now, there's no—

Q. —there are no lessons?

A. No.

After reviewing the record thoroughly, we find no evidence regarding the current cost of these lessons or even evidence that Ms. Searcy has priced the cost of new dance classes or piano lessons. *Cf. Garner v. Garner,* 973 S.W.2d 513, 516 (Mo.App. E.D.1998) (mother produced cancelled checks to support award for children's ongoing athletic costs). Accordingly, the evidence was too speculative to support the inclusion of these expenses in the child support award.

▬ Although there is not sufficient evidence regarding these costs, we do not mean to say that the children must be attending lessons before the trial court may include these expenses in any child support award. The trial court may make any such award contingent upon future attendance. *See Hill,* 1 S.W.3d at 620 (award of school costs could be made contingent on future entry into school). But the award "must be based on specific evidence of those costs." *Id.* Because the record does not contain specific evidence regarding those costs, we reverse and remand for further proceedings to allow the trial court to hear additional evidence on this issue.

## 2. Consideration of New Wife's Income

▬ When calculating the Form 14 amount, the trial court may not consider the income of Mr. Searcy's new wife or the reduced expenses resulting from his new wife's contributions to their household. As this court said in *Elliott,* "the consideration of cohabitant contributions is *not* a

Form 14 calculation consideration." 920 S.W.2d at 579.

■ But the trial court may consider the new wife's contribution to the payment of household expenses, in connection with its consideration of the parents' financial resources and needs, when rebutting the Form 14 amount:

> Despite the fact that Form 14 does not incorporate the income of a present spouse in its mathematical calculations, Rule 88.01(b) requires that the court consider 'the financial resources and needs of the parents.' When given its plain and ordinary interpretation, such language would naturally include consideration of the contribution of Father's present spouse to the payment of their household expenses, because Father's resources and needs and those of his spouse are interdependent.

*McMickle v. McMickle,* 862 S.W.2d 477, 482–83 (Mo.App. W.D.1993).

This reasoning "is consistent with Rule 88.01 and § 452.340.8, which provide that the presumed correct child support amount may be 'rebutted' upon a finding that the amount is unjust or inappropriate after consideration of all relevant factors." *Elliott,* 920 S.W.2d at 578.

■ In short, the trial court only considers the "cohabitant contribution" *after* calculating the Form 14 amount. It does so not to determine what that amount is, but "to determine the ability of each parent to pay his or her share [of that amount] and whether the Form 14 amount is unjust or inappropriate." *Id.* at 579.

Although the trial court's judgment here invoked both § 452.340 and § 452.370 as authority for considering the new wife's contribution to household expenses, the trial court nevertheless appears to have followed the guidelines set forth in *McMickle* and *Elliott.* There is no evi-

dence that the trial court considered the new wife's income in its Form 14 calculation or otherwise imputed income to Mr. Searcy in the Form 14 calculation based upon his new wife's income. The trial court only considered the new wife's contributions after calculating the presumed Form 14 amount. It did so in connection with one of the relevant factors (the financial resources and needs of the parents) set forth in § 452.340.1 to rebut the Form 14 amount as unjust or inappropriate. We find no error. Point denied.

## B. Modification of Visitation

■ The trial court may modify visitation rights "whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." § 452.400.2. As used in § 452.400.2, the word "restrict" means " 'to set bounds or limits to' or 'to check, bound, or decrease the range, scope or incidence of.' " *Turley v. Turley,* 5 S.W.3d 162, 165 (Mo. banc 1999) (quoting *Webster's Third New International Dictionary* 1937 (1981)). As the Missouri Supreme Court explained in *Turley,* "[a] modification of visitation does not itself rise to a restriction or limitation. For sec. 452.400.2 to apply, the modification must restrict or limit one party's visitation rights compared to [that party's] visitation rights under the original agreement." *Id.*

■ Although *Turley* declared that a modification need not entirely restrict visitation to constitute a restriction under § 452.400.2, the Missouri Supreme Court expressly declined to decide whether a shortening of a visitation period is a restriction. *Id.* at 165 & n. 2. On the record before us, we do not believe that the modification here rises to the level of a "restric-

tion," such that the trial court should have made findings under § 452.400.2. *See Quackenbush v. Hoyt,* 940 S.W.2d 938, 944 (Mo.App. S.D.1997) ("A reduction in time of a parent's scheduled visitation is not a 'restriction' of visitation rights and, therefore, does not require a finding of physical endangerment or impairment of emotional development.")

As examples of restrictions from other jurisdictions, *Turley* mentioned "preventing a parent from having overnight visitation, restricting all visits to the custodial parent's home or outside of the noncustodial parent's home, and requiring a third party be present to supervise visitation periods." 5 S.W.3d at 165. These examples suggest that a restriction amounts to something more than a modest shortening of visitation to accommodate the children's best interests in performing well in school. The trial court must have some leeway to modify visitation in the children's best interests without having to make findings under § 452.400.2 every time that it does so.

We recognize that the Eastern District recently held that the reduction of a father's visitation by 16.75 hours per two-week period is a restriction. *Loebner v. Loebner,* 71 S.W.3d 248, 258 (Mo.App. E.D. 2002). By contrast, the judgment in this case shortened Mr. Searcy's visitation an average of only eight hours every month, a substantially less onerous modification and one that distinguishes this case from *Loebner.* Point denied.

## IV.  Conclusion

Because there was no substantial evidence to support the cost of lessons in this case, we reverse and remand on that issue to allow the trial court to hear additional evidence regarding the cost of such les-

sons.  In all other respects, we affirm the trial court's judgment.

HAROLD L. LOWENSTEIN, P.J. and JAMES M. SMART, JR., concur.