Jeriane M. JACO, Respondent,

v.

Brian L. JACO, Appellant.

WD 79972

Missouri Court of Appeals,
Western District.

April 18, 2017

Randall O. Barnes, Jefferson City, MO, for Respondent

Sara Catherine Michael, Jefferson City, MO, for Appellant.

Before Division Two: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge and Alok Ahuja, Judge

Cynthia L. Martin, Judge

Brian Jaco ("Father") appeals from a judgment denying his motion to modify the child support provisions of a dissolution decree. We affirm.

## Factual and Procedural Background

The marriage between Father and Jeriane Jaco ("Mother") was dissolved by a dissolution decree entered in December 2010 ("Dissolution Decree"). The Dissolution Decree awarded Father and Mother joint physical and legal custody of their minor child. The Dissolution Decree approved and incorporated the terms of a separation agreement. The incorporated separation agreement reflected Father and Mother's agreement that the Form 14 presumed child support amount was unjust and inappropriate, giving due consideration to all relevant factors, and that neither party should be obligated to pay child support to the other. The incorporated separation agreement also reflected Father and Mother's agreement to equally divide uncovered medical, educational, extraordinary, and childcare expenses. The Dissolution Decree thus awarded no child support to either party, and ordered Mother and Father to bear equal responsibility for the child's uncovered expenses. Mother's gross monthly income at the time of the Dissolution Decree was $3,476.00, while Father's was $2,305.00.[1]

Father filed a motion to modify the Dissolution Decree in December 2015 ("Motion"). Father's Motion sought to modify both parenting time and the child support provisions of the Dissolution Decree. Father's Motion alleged that modification of the child support provisions was necessary because of a substantial and continuing change of circumstances that rendered the original support provisions unreasonable. Specifically, Father's Motion alleged that the "relative income of the parties ha[s] substantially changed since [the Dissolu-

1. Neither the separation agreement nor the Dissolution Decree are included in the record on appeal. Father's Income and Expense Statement filed in connection with his motion to modify reflected the parties' gross monthly incomes as of the date of the Dissolution Decree. These amounts were confirmed by testimony during the hearing on Father's motion to modify.

tion Decree] and that the cost of raising [the child] has substantially increased since [the Dissolution Decree]." After a bench trial, the trial court issued its judgment and decree of modification ("Judgment").

The Judgment found "a continuing change of circumstances sufficient to modify ... the custody schedule" previously ordered in the Dissolution Decree. The Judgment ordered that the parties would continue to have joint legal and physical custody of the child, but modified the parenting plan's custody schedule.[2] Neither Father nor Mother have appealed the Judgment's modification of the custody schedule.

With respect to Father's request to modify the child support provisions in the Dissolution Decree, the Judgment found that "both parties are capable of contributing to the support of the minor child." At the time of the hearing on Father's Motion, Mother's gross monthly income was $5,680.00, and Father's gross monthly income was $2,417.00. In addition, Father had remarried, and his new spouse ("Stepmother") had a gross monthly income of $7,083.34. Mother was engaged and living with her fiance, whose gross monthly income was $3,400.00. Father's Income and Expense Statement assumed that Stepmother contributed to pay 50% of household expenses. Mother's Income and Expense Statement assumed her fiancé contributed to pay 40% of her household expenses.

The trial court calculated a presumed child support amount pursuant to Supreme Court Rule 88.01, Form 14, and section 452.340. The presumed child support amount would have required Mother to pay Father $401.00 per month. However, the trial court found the presumed child support amount to have been rebutted as unjust and inappropriate. The trial court reasoned that in light of Stepmother's income, Father "is not in need of child support." The trial court also found that, in light of Stepmother's income, Father is capable of contributing equally to uncovered medical expenses, extracurricular expenses, and extraordinary expenses. The trial court denied Father's request to modify the Dissolution Decree's child support provisions.[3]

2. The original parenting plan approved by the Dissolution Decree is not included in the record on appeal. According to Father's testimony at trial, the original custody schedule had the minor child with him two nights a week from 5:00 p.m. to 8:00 a.m. the following morning, and every other weekend from Friday at 5:00 p.m. to Sunday at 2:00 p.m. However, the parties had relaxed this schedule, and Father often picked the minor child up before 5:00 p.m. The modified parenting plan approved by the trial court had the parties alternating weeks with the minor child. Though the modified parenting plan appears to have increased Father's time with the minor child by some amount, that amount is not quantified in the record on appeal. Regardless, Father did not seek modification of child support on the basis of increased parenting time in his Motion, and did not argue that a change in parenting time warranted modification of child support at trial, in his post-Judgment motion for new trial, or on appeal. Father's basis for arguing a substantial and continuing change in circumstances warranting modification of child support has consistently been the change in his income relative to Mother's and a claimed increase in the costs to raise the minor child.

3. The Judgment specified that Father would be responsible for maintaining health insurance on the minor child, so long as available through his or Stepmother's employer, and ordered Father and Mother to bear equal responsibility for the minor child's uncovered medical, pharmaceutical, dental, and vision expenses. These obligations are not materially different from those imposed by the Dissolution Decree, save reference to Father's obligation, if necessary, to secure medical insurance through Stepmother's employer. The Judgment found that all terms of the Dissolu-

Father filed a motion for new trial, for reconsideration, or to amend the Judgment, which the trial court denied. This timely appeal follows.

## Standard of Review

Because this is a court tried case, "the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Blue Ridge Bank & Trust Co. v. Trosen (Trosen II )*, 309 S.W.3d 812, 815 (Mo. App. W.D. 2010) (quoting *McNabb v. Barrett*, 257 S.W.3d 166, 169 (Mo. App. W.D. 2008)). "We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Id.* (quoting *Brown v. Mickelson*, 220 S.W.3d 442, 447 (Mo. App. W.D. 2007)). "We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* (quoting *Brown*, 220 S.W.3d at 447)).

Because we are "primarily concerned with the correctness of the trial court's result," we will affirm the trial court's judgment "if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id.* (quoting *Blue Ridge Bank & Trust Co. v. Trosen (Trosen I )*, 221 S.W.3d 451, 457 (Mo. App. W.D. 2007)).

## Analysis

Father asserts two points on appeal. In his first point, Father argues that the trial court erred in considering Stepmother's income when ordering that no child sup-

tion Decree not in contradiction with the Judgment would remain binding on the par-

port be paid because pursuant to section 453.400 and Rule 88, a stepparent's income should not ameliorate a parent's child support obligation. Father's second point claims the trial court erred in equally dividing uncovered expenses of the minor child because the evidence did not support that division as just and fair in light of the parents' income disparity.

## Point One

Father's first point on appeal argues that because the trial court relied on Stepmother's income to refuse to award him child support, the trial court violated section 453.400.1. Section 453.400.1 provides:

A stepparent shall support his or her stepchild to the same extent that a natural or adoptive parent is required to support his or her child so long as the stepchild is living in the same home as the stepparent. However, nothing in this section shall be construed as abrogating or in any way diminishing the duty a parent otherwise would have to provide child support, and no court shall consider the income of a stepparent, or the amount actually provided for a stepchild by a stepparent, in determining the amount of child support to be paid by a natural or adoptive parent.

Father's argument is unavailing.

Father's point on appeal ignores that notwithstanding section 453.400.1, a trial court is required by section 452.370.1 to consider both parties' financial resources, including a co-habitant's contribution to household expenses, when considering a motion to modify an existing child support award. Section 452.370.1 provides, in pertinent part:

ties.

[T]he provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

Section 452.370.1 thus prohibits a trial court from modifying existing child support provisions *unless* a substantial and continuing change in circumstances sufficient to make the existing terms unreasonable is established. And in assessing whether this burden has been sustained, the trial court "*shall* consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse." *Id.* (emphasis added). "The party seeking modification has the burden to establish that the terms of the original decree have become unreasonable." *In re Marriage of Lindhorst*, 347 S.W.3d 474, 476 (Mo. banc 2011).

Here, Father alleged a substantial and continuing change of circumstances rendering the original child support provisions unreasonable based on the relative change in Father and Mother's gross income since entry of the Dissolution Decree. Father's Motion alleged that Father's gross monthly income was now $2,417.00, while Mother's gross monthly income was now $5,680.00. Father's Motion failed to account, however, for all of his financial resources, including the extent to which Stepmother contributed to household expenses. Father admitted during cross-examination at trial that at a minimum, Stepmother's income contributed to cover 50% of his household expenses, if not closer to 75%. Yet, Father offered no evidence suggesting that his household expenses had changed at all, let alone substantially or continuously, since the Dissolution Decree. Mother testified at trial that nothing had changed to warrant modification of child support as both parties' households were benefitting from co-habitant income contributing to household expenses, with the combined incomes in both households being roughly equivalent.

Father acknowledges in his Reply Brief that "[s]ection 452.370.1 allows the trial court to consider the [stepparent's] contribution to determine if there is a change in circumstances." [Reply Brief, p. 5] In fact, section 452.370.1 *requires* a trial court to consider co-habitant contributions to determine if there is a change in circumstances. We must assume that the trial court abided by the mandatory directive to do just that in determining whether Father sustained his burden pursuant to section 452.370.1. *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) ("[T]rial judges are presumed to know the law and to apply it in making decisions."). Though the Judgment did not expressly state that Father failed to sustain his burden pursuant to section 452.370.1, we are to affirm the trial court's Judgment on that basis if supported by the record, regardless of other reasons advanced by the trial court in support of the Judgment. *Trosen II*, 309 S.W.3d at 815. Here, the Judgment found "that both parties are capable of contributing to the support of the minor child." And the Judgment found that at the time of the Dissolution Decree, the circumstances were identical, such that "no child support would be paid by either party to the other" considering "all relevant factors pursuant

to section 452.340.8 and Rule 88.01." These findings, and the evidence of financial resources available to both Father and Mother to contribute toward expenses, support the conclusion that Father failed to sustain his burden to demonstrate a substantial and continuing change in the parties' financial circumstances rendering existing child support provisions unreasonable.[4]

In his Reply Brief, Father argues that the trial court found a substantial and continuing change of circumstances, referring to the finding in the Judgment that there had been "a continuing change of circumstances sufficient to modify this Court's previous ... *custody schedule.*" (Emphasis added). However, this finding referred to Father's request to modify the custody schedule, and not to Father's request to modify child support. The statutory standard to modify custody is different from that required to modify child support. *Compare* section 452.410.1 (stating that a court shall not modify a prior custody decree unless it finds "that a change has occurred in the circumstances ... and that the modification is necessary to serve the best interests of the child"), *with* section 452.370.1 (stating that child support provisions in a judgment "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable"). Father has never argued that modification of the custody schedule served to sustain his burden under section 452.370.1.

Because the Judgment can be affirmed on the basis that Father failed to sustain his burden to establish a substantial and continuing change of circumstances rendering the original child support award unreasonable, it is unnecessary to address the Judgment's finding that the presumed child support award calculated based on Father's and Mother's revised incomes should nonetheless be rebutted as unjust and inappropriate. Either path leads to the same result: Father is not entitled to modification of the existing child support award.

The dissent criticizes our application of settled principles of appellate review, including the Rule 73.01(c) presumption that the trial court found all fact issues upon which no specific findings were made in accordance with the result reached, and our affirmance on any basis supported by the record, regardless of an alternative basis expressed in the Judgment. The dissent argues that because the trial court calculated a presumed child support amount, it must be presumed that the trial court found Father to have sustained his burden to establish a substantial and continuing change in circumstances rendering the original child support amount unreasonable. We disagree.

First, though the trial court was not required to calculate a Form 14 presumed child support amount unless Father sustained his burden to demonstrate a substantial and continuing change in circumstances rendering the original support award unreasonable (see sections 452.370.1–.2), it did not commit error in doing so. It is not uncommon for trial courts to proceed with a Form 14 calculation when addressing a motion to modify, even though the court might not have an obligation to do so. Section 452.370.1 provides that if the newly calculated presumed child support award varies from the original award by 20% or more, a *prima facie* case of a substantial and continuing

4. Pursuant to Rule 73.01(c), "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

change in circumstances is established.[5] The 20% rule thus encourages the calculation of a new presumed child support amount in order to rule out a presumptive requisite change in circumstances. Moreover, a trial court cannot be faulted for electing to advise through its judgment that regardless whether a requisite change in circumstances was demonstrated, the new presumed child support amount would be nonetheless rebutted as unjust and inappropriate. Calculation of a new presumed child support award does not mean, as a matter of law, that a trial court found the party requesting modification sustained the burden described in section 452.370.1.

Second, the dissent presumes an unexpressed finding—that Father sustained his burden to establish the requisite change in circumstances—then relies on this unexpressed finding to find a path to reverse the Judgment. The dissent's approach is directly contrary to our obligation to presume that all unexpressed findings are consistent with the result reached by the trial court. Rule 73.01(c).

Third, the dissent fails to address how this record could have supported a finding that Father sustained his burden to establish a substantial and continuing change in circumstances rendering the existing child support award unreasonable. It was Father's burden to establish the requisite change in circumstances in the manner required by section 452.370.1. It was thus Father's burden to establish not simply that Mother's income had increased disproportionate to his since entry of the Dissolution Decree, but that in light of *all* of the "financial resources of both parties,

including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits," there was a substantial and continuing change in circumstances that rendered the existing child support award unreasonable. Section 452.370.1. Father's Motion did not address the financial resources of either himself or Mother, nor the extent to which Stepmother did (or did not) contribute to his expenses. And Father's evidence did not address these required considerations. In fact, when Mother's counsel began to cross-examine Father about Stepmother's income and her percentage contribution to household expenses, Father's counsel objected, claiming the testimony was not relevant! The trial court properly overruled this objection, noting that evidence of Stepmother's income would "be relevant if there were two or three findings." The dissent acknowledges that this comment reflects an understanding that the evidence was relevant to determining whether a substantial and continuing change of circumstances had been established.

After Father's objection was overruled, Father conceded on cross-examination that Stepmother contributed at least 50% toward his expenses, if not 75%, given the relative differences in their incomes. Father offered *no* evidence comparing his current expenses with those he had at the time of the dissolution decree, and thus no evidence permitting the conclusion that his expenses had increased notwithstanding Stepmother's conceded contribution. Mother's evidence established that her fiancé contributed to 40% of her expenses. Mother also testified that modification of child support was not warranted because "noth-

---

**5.** The 20% presumption could not have applied here, as it only applies where the original child support award was based on the presumed amount as calculated pursuant to the child support guidelines. Section 452.370.1. Regardless, the 20% provision in section 452.370.1 no doubt contributes to a practice of calculating a new presumed child support award, even if the exercise is not required.

ing had changed," as both Father and Mother remained equivalently able to provide support for their child given co-habitant contributions to expenses. And that is precisely what the Judgment found: that "both parties are capable of contributing to the support of the minor child." There is *no* evidence on this record that would have permitted the trial court to conclude that Father sustained his burden to establish changed circumstances so substantial and continuing as to make existing child support terms unreasonable, given Father's burden to address all financial resources available to both parties, including the extent to which the reasonable expenses of either party are shared by a cohabitant.

Finally, after concluding that the trial court must have found that Father sustained his burden pursuant to section 452.370.1, the dissent then finds that the trial court erroneously rebutted the calculated presumed child support award as unjust and inappropriate by expressing its decision in terms of Stepmother's income, in contravention of section 453.400.1. The dissent ignores the evidence and our standard of review in reaching this conclusion. As the dissent recognizes, and as Father's Reply Brief admits, it does not violate section 453.400.1 to calculate a presumed child support award without regard to a co-habitant's income, only to then rebut the presumed award as unjust and inap-

propriate after considering co-habitant contributions to expenses. *Searcy v. Searcy*, 85 S.W.3d 95, 102 (Mo. App. W.D. 2002); *McMickle v. McMickle*, 862 S.W.2d 477, 482–83 (Mo. App. W.D. 1993); section 452.340.1. The record supports the conclusion that the trial court did precisely what *Searcy, McMickle*, and section 452.340.1 authorize. The trial court first determined a presumed child support award without regard to co-habitant income. The trial court then rebutted the presumed award as unjust and inappropriate based on the evidence. Though the trial court's finding in this regard was expressed by reference to Stepmother's income, that finding must be viewed in the context of the evidence, which plainly established that Stepmother's income contributed 50%–75% toward Father's expenses. It bears repeating that we are required to affirm a trial court's judgment on any basis supported by the record, even if that basis is other than that which is expressed by the trial court. Rule 73.01(c); *Trosen II*, 309 S.W.3d at 815.[6]

Father's first point on appeal is denied.

### Point Two

■ In his second point on appeal, Father argues that the trial court abused its discretion in equally dividing responsibility for the minor child's uncovered expenses because the evidence did not support this decision given the disparity between Fa-

---

**6.** The dissent's reliance on *Young v. Young,* 14 S.W.3d 261 (Mo. App. W.D. 2000), and *Gholson v. Director of Revenue,* 215 S.W.3d 229 (Mo. App. W.D. 2007), in an effort to dissuade the application of Rule 73.01(c) to this case is unpersuasive. *Young* reversed because of the absence of one of two essential findings—the statutory basis for termination of parental rights—under circumstances where it appeared the trial court terminated parental rights based solely (and erroneously) on a best interest determination. 14 S.W.3d at 264. *Gholson* refused to assume a finding that was directly controverted by on-the-record com-

ments by the trial court. 215 S.W.3d at 234. In the instant case, the trial court was not required to make a finding regarding changed circumstances in order to *deny* modification of child support because a new presumed amount would in any event be rebutted as unjust and inappropriate. And, as the dissent acknowledges, the trial court's on-the-record comments are consistent with a finding that Father failed to sustain his burden to establish a substantial and continuing change of circumstances rendering the original child support award unreasonable.

ther and Mother's incomes. Father argues that Mother's income had increased by more than 60% since the date of the Dissolution Decree, where Father's had remained stagnate. Father argues that his family obligations have increased, where Mother's obligations have not, as Father and Stepmother now have two children together. Father also argues that although Stepmother makes $7,083 a month, she is financially obligated to support three children born prior to her marriage to Father.

Father offered very limited evidence at trial addressing the subject of uncovered expenses of the minor child, and no evidence indicating that those expenses had materially increased. In fact, the trial testimony suggests that certain expenses, such as day care, had actually decreased since the entry of the Dissolution Decree.

Though Father's evidence established that Mother's income had increased since the Dissolution Decree disproportionate to his own, we have already explained that the trial court was required to consider all of Father's financial resources, including Stepmother's contributions to household expenses, in determining whether Father sustained his burden to establish a substantial and continuing change in circumstances rendering the original obligation to equally divide uncovered expenses unreasonable. On this record, it was not an abuse of discretion to conclude that Father failed to sustain this burden, and that Father "is capable of contributing equally to [child's uncovered] expenses."

Point Two on appeal is denied.

## Conclusion

The Judgment of the trial court is affirmed.

Hardwick, Judge, joins in the majority opinion

Ahuja, Judge, dissents in separate opinion

Alok Ahuja, Judge, dissenting.

The majority opinion affirms by presuming that the trial court found that Father failed to make the threshold showing necessary to justify a modification of child support: the existence of "changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1.[1]

I respectfully dissent. On this record, we cannot affirm based on a presumed finding that no substantial and continuing change of circumstances had been shown. There is no reason to *presume* the basis of the trial court's judgment, because the judgment *explicitly tells us* why the court refused to modify the child support award. We should be reviewing the judgment the circuit court actually entered.

The trial court's written judgment explicitly states why the trial court denied Father a modification of child support:

The Court calculates the child support, pursuant to Supreme Court Rule 88.01 and Form 14, and Section 452.340, RSMo. 2011, is $401.00 per month payable by [Mother] to [Father] but said child support calculation is rebutted as being unjust and inappropriate in that [Father] has remarried and his new spouse has a gross monthly income of $7,083.34 and therefore, the Court determines that [Father] is not in need of child support.

The circuit court did not refuse to modify child support because Father had failed to prove a substantial and continuing change of circumstances since entry of the

---

1. Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the most recent cumulative and non-cumulative supplements.

original dissolution decree. Instead, the judgment says that the court denied Father's motion because, although the application of Rule 88.01 and Form 14 resulted in a presumed child support amount of $401.00 per month, that amount was unjust and inappropriate based on a single consideration: that Father's "new spouse has a gross monthly income of $7,083.34."

In a proceeding for modification of child support, the circuit must first determine, under § 452.370.1, whether the moving party has shown a substantial and continuing change of circumstances. Section 452.370.2 then provides that, "[w]hen the party seeking modification has met the burden of proof set forth in subsection 1 of this section [*i.e.*, by establishing a substantial and continuing change of circumstances], the child support shall be determined in conformity with the criteria set forth in section 452.340 and applicable supreme court rules."

Under §§ 452.370.1 and .2, calculation of a presumed child support amount, and the rebuttal of that amount as unjust and inappropriate, is only necessary *after* the court has first determined that a substantial and continuing change of circumstances has occurred. *See, e.g., McMickle v. McMickle,* 862 S.W.2d 477, 480 (Mo. App. W.D. 1993) ("Once the moving party has met the burden of proving a change of circumstances,

child support is determined by applying the criteria in Rule 88.01.").[2] By presuming that the circuit court made an (unstated) finding that Father had failed to prove a substantial and continuing change of circumstances, the majority renders the findings the trial court *actually made* legally irrelevant.

It is black-letter law that "trial judges are presumed to know the law and to apply it in making their decisions." *State v. Amick,* 462 S.W.3d 413, 415 (Mo. banc 2015) (citations omitted). Therefore, if we are to indulge any presumption in this case, we should presume that the circuit court knew that it was only required to calculate a presumed child support amount, and to rebut that amount as unjust and inappropriate, *if* the court *first* found a substantial and continuing change of circumstances.

But there is no need to rely on any presumption here: the circuit court's comments at trial show that it was aware that rebuttal of a presumed child support amount would only be necessary if the court first found a substantial and continuing change of circumstances. When Father's counsel objected to the introduction of evidence concerning Stepmother's income, Mother's counsel responded that Stepmother's income could be relevant "if

2. Section 452.370.1 provides that,

If the application of the child support guidelines and criteria set forth in section 452.340 and applicable supreme court rules to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable, if the existing amount was based upon the presumed amount pursuant to the child support guidelines.

Thus, in certain circumstances, calculation of a presumed child support amount may be

necessary to answer the threshold question whether a substantial and continuing change of circumstances has occurred. The presumption was inapplicable here, however, because "the existing [child-support] amount" in this case was <u>not</u> "based upon the presumed amount pursuant to the child support guidelines." *See, e.g., Hueckel v. Wondel,* 270 S.W.3d 450, 456 (Mo. App. S.D. 2008). In any event, the "20% presumption" only requires calculation of *the presumed child support amount* at the time of the modification proceeding; it does not require the court to consider whether to *rebut* that presumed amount.

you're going to deviate from the support." The trial court agreed:

> Yeah, I think it would only be relevant if there were two or three findings, but I don't want to have to have them come back if I make those findings, so he can answer if he knows.

Under §§ 452.370.1 and .2, the "two or three findings" which would make Stepmother's income relevant were (1) that a substantial and continuing change of circumstances had occurred; and (2) a calculation of the presumed child support amount using Form 14.

Reviewing the circuit court's judgment based on the findings the court actually made is not inconsistent with Rule 73.01(c). This Court has refused to presume unstated findings, and affirm on the basis of such unstated findings, in other cases in which the judgment expressly states the basis of the circuit court's decision. For example, in *Young v. Young*, 14 S.W.3d 261 (Mo. App. W.D. 2000), this Court reversed the trial court's award of custody to a child's maternal grandmother in a dissolution proceeding. The trial court's judgment justified the award of third-party custody solely on the basis that such an award "is in the best interests of the minor child." *Id.* at 263. Under § 452.375.5(5)(a), however, third-party custody may only be awarded if the court finds (1) that the parents are unfit, unsuitable, unable to be a custodian, or the welfare of the child requires, <u>and</u> (2) that "it is in the best interests of the child." The judgment in *Young* failed to make any express finding that the first pre-condition had been satisfied (parental unfitness or welfare of the child). *Id.*

Based on the lack of any finding of parental unfitness or the welfare of the child, the father in *Young* argued that "[t]he circuit court's conclusion that [the maternal grandmother's] care was in the child's best interests was not sufficient to

establish third-party custody." 14 S.W.3d at 263. In response, the child's mother argued that this Court "should assume the circuit court made findings consistent with the judgment." *Id.* This Court refused to presume that the circuit court had made a finding of parental unfitness or the welfare of the child because—like here—the judgment explicitly stated the basis on which the court awarded third-party custody:

> [Mother] suggests that, because neither party requested that the circuit court make findings of fact and conclusions of law, we should assume that the circuit court made findings consistent with the judgment. Indeed, Rule 73.01(a)(3) [now Rule 73.01(c)] directs us to assume, in the absence of a specific finding, that all fact issues were resolved in accordance with the circuit court's judgment. Nonetheless, when a circuit court volunteers findings of fact, the findings are reviewable on appeal. The voluntary statement by the circuit court of the grounds for its decision certainly may be considered in determining what evidence, if any, it rejected. It may also be considered in determining whether the circuit court misapplied the law.

*Id.* (citations and internal quotation marks and brackets omitted). *Young* then went on to hold that the circuit court had erred by ordering third-party custody based solely on its "best interests" finding, without finding the parents unfit or that the welfare of the child required the third-party custody arrangement. *Id.* at 264.

The argument for presuming a finding was considerably *stronger* in *Young* than in this case. Under § 452.375.5, before awarding third-party custody the circuit court must *first* find parental unfitness or the welfare of the child in order to rebut the presumption of parental fitness; only *after* making such a finding does the court consider the "best interests" factor. *See*

*Flathers v. Flathers*, 948 S.W.2d 463, 469–71 (Mo. App. W.D. 1997). Therefore, the finding that the mother asked this Court to presume in *Young* was *legally required* before the trial court could consider the child's best interests. Even so, we refused to presume that the circuit court had made a finding of parental unfitness or the welfare of the child, and then reversed because of the circuit court's failure to make those necessary findings. Here, the majority is presuming a finding which is *contrary* to the circuit court's express finding that child support should be denied because the presumed child support amount was unjust and inappropriate.

A second case illustrating that this Court will rely on the circuit court's stated reasons for decision, to the exclusion of a presumed finding of additional reasons, is the *en banc* decision in *Gholson v. Director of Revenue*, 215 S.W.3d 229 (Mo. App. W.D. 2007). In *Gholson*, the circuit court reinstated a driver's driving license, following the driver's arrest for driving while intoxicated, based on its determination that the arresting officer had failed to comply with the regulations governing breathalyzer testing.

This Court's opinion explained that "[t]he basis on which the circuit court overturned the director's revocation is the central issue in this case." 215 S.W.3d at 230. The circuit court's judgment found that the driver "was not observed at all times during the 15–minute observation period prior to the administration of a Blood Alcohol Content test and that [the driver] *had an opportunity* to place chewing gum in his mouth during that period." Quoted at 215 S.W.3d at 231 (emphasis added). At trial, the driver had testified that he *actually put* gum in his mouth during the observation period. This Court refused to presume that the circuit court had found that the driver actually ingested

gum during the observation period. In doing so, the Court quoted at length from the trial court's comments during a hearing on the Director's motion to amend the judgment, in which the circuit court stated that it intended *only* to find that the drive *had an opportunity* to place gum in his mouth. The Court explained that "[t]he circuit court's [post-judgment] explanation confirmed what is clear in the judgment itself: that the only basis for its judgment was that the officer did not comply with the 15–minute observation period." *Id.* at 234. The Court reversed the circuit court's judgment. We held that the officer's failure to continuously observe the driver, without "evidence that he smoked, vomited, or orally took other materials during that period," was insufficient to rebut the Director's *prima facie* evidence. *Id.* at 235.

Notably, the dissent in *Gholson* advocated the approach adopted by the majority in this case: that Rule 73.01(c) required the Court to presume a finding that the driver actually put gum in his mouth during the observation period. 215 S.W.3d at 235–36. The *Gholson* majority refused to adopt this approach, however.

In this case, as in *Young* and *Gholson*, the circuit court's judgment explicitly stated the basis for the court's denial of Father's motion to modify child support: that the presumed child support amount was unjust and inappropriate because Father's "new spouse has a gross monthly income of $7,083.34." The judgment was *not* based on a finding that Father had failed to establish a substantial and continuing change of circumstances. Here, "the trial court *said* why it was ruling as it did." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 831 (Mo. App. W.D. 2012) (en banc) (Ahuja, J. dissenting). We should not "affirm [the] judgment by relying on 'presumed findings of fact' which the court plainly did not make"; "[t]he standard of

appellate review does not require us to blind ourselves to what the record so clearly reveals, and instead engage in an exercise in make-believe." *Id.* at 834, 835.

On the merits, I believe the circuit court's denial of a modification of child support must be reversed, and the case remanded for further proceedings. The circuit court's judgment, quoted above, explicitly finds that Father "is not in need of child support" because "[Father] has remarried and his new spouse has a gross monthly income of $7,083.34." The circuit court again explicitly relied on Stepmother's income in denying Father's request that Mother pay a greater share of the child's non-recurring expenses. The judgment states that

> [t]he Court denies [Father's] request that the parties be ordered to proportionately contribute to the child's uncovered medical expenses, extracurricular expenses and extraordinary expenses in that, though [Mother] makes 70% and [Father] makes 30% of the combined gross monthly income, the Court considers [Father's] new spouse's income and determines that [Father] is capable of contributing equally to said expenses.

Thus, the trial court explicitly held that Mother would be relieved of any obligation to pay child support, and would be excused from paying a higher proportion of non-recurring expenses, because of the size of Stepmother's gross income.

The trial court's explicit reliance on Stepmother's gross income to discharge Mother of her support obligations is inconsistent with § 453.400.1, which provides:

> no court shall consider the income of a stepparent, or the amount actually provided for a stepchild by a stepparent, in determining the amount of child support to be paid by a natural or adoptive parent.

Section 453.400 is applicable in dissolution proceedings, and it prevents a step-parent's income from being considered *either* in determining the amount of a parent's monthly support payments, *or* the amount of the parent's obligation to pay non-recurring expenses. *See, e.g., Francis v. Glenn,* 903 S.W.2d 222, 224 (Mo. App. S.D. 1995) (§ 453.400 prevents consideration of income of mother's new husband in calculating presumed child support amount in modification proceeding); *Burton v. Donahue,* 959 S.W.2d 946, 949 (Mo. App. E.D. 1998) (same; also holding that "[b]ecause the awarding of college expenses is a form of child support, it follows that section 453.400.1 prohibits a court from considering a stepparent's income in determining the amount of college expenses a natural parent should pay").

In this case, the trial court did not consider Stepmother's income to calculate the presumed child support amount, but instead only to justify rebutting the presumed amount. This makes no difference. Section 453.400.1 does not merely prohibit consideration of a step-parent's income in determining a presumed child support amount. Instead, it broadly prohibits courts from considering a step-parent's income "in determining the amount of child support to be paid by a natural or adoptive parent." Rebutting a presumed child support amount, and determining that a different amount is appropriate, is part of the process of "determining the amount of child support to be paid by a natural or adoptive parent." The rebuttal process is not exempt from the prohibition in § 453.400.1. The trial court cannot exercise its discretion to rebut a presumed child support amount based on circumstances which the law prohibits it from considering. *Cf. Rackers v. Rackers,* 500 S.W.3d 328, 337 (Mo. App. W.D. 2016) ("A trial court may not find a Presumed Child Support Amount to be unjust and inappropri-

ate simply because the court chooses to ignore particular mandatory aspects of the Form 14 calculation.").

I recognize that, in a series of cases which do not cite § 453.400.1, this Court has held that "the trial court may consider the new wife's contribution to the payment of household expenses, in connection with its consideration of the parents' financial resources and needs, when rebutting the Form 14 amount[.]" *Searcy v. Searcy*, 85 S.W.3d 95, 102 (Mo. App. W.D. 2002). This principle can be harmonized with § 453.400.1, and it does not support affirmance in this case. Under *Searcy*, in connection with rebutting a presumed child support amount, a circuit court may properly consider that a party's new spouse contributes to the expenses of the home which the party and their new spouse share.[3] Under § 453.400.1, on the other hand, the court cannot consider the new spouse's income in determining the child support payable by a biological or adoptive parent. While it is appropriate to consider that a party lives with another person who contributes, or *should* contribute, to the party's living expenses, that is far different from relying on the co-habitant's entire income—particularly the co-habitant's entire *gross* income—to discharge a biological or adoptive parent from any child support obligation. Considering a step-parent's contribution to the expenses of a jointly maintained household is a far cry from considering the entirety of the step-parent's income.

In this case, the circuit court did not simply consider the extent to which Stepmother did, or ought to, contribute to the expenses of the household she shares with Father. Instead, the circuit court categorically stated that, based on its consideration of Stepmother's gross income, Mother should be relieved of any child support obligation whatsoever. The circuit court's action in this case was not authorized by *Searcy*, and is flatly inconsistent with § 453.400.1.

I would accordingly reverse the circuit court's refusal to modify the existing child-support award, and remand the case to the circuit court for further consideration, consistent with the dictates of § 453.400.1.

---

**3.** *McMickle*, 862 S.W.2d 477, on which *Searcy* relied, makes clear that a new spouse's finances are relevant only to the extent of the new spouse's contribution to shared living expenses:

> Rule 88.01(b) requires that the court consider "the financial resources and needs of the parents." When given its plain and ordinary interpretation, such language would naturally include consideration of the contribution of Father's present spouse to the payment of their household expenses, because Father's resources and needs and those of his spouse are interdependent. Even though the evidence indicates that Father and his new spouse keep separate bank accounts, Father testified that they share the expenses required to maintain their household. In order for the trial court to determine Father's needs, it necessarily considered the share of the living expenses paid by his spouse from her own resources.

*Id.* at 482–83.